**George L. CHADWELL, Plaintiff,**

v.

**OPTICAL RADIATION CORPORATION, Defendant.**

**No. IP 93–1288–C.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

June 29, 1995.

---

William H. Robbins, Rolfe Garvey Walker & Robbins, Greensburg, IN, for Plaintiff.

T. Neil Bemenderfer, Smith & Bemenderfer, Indianapolis, IN, for Defendant.

### ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

McKINNEY, District Judge.

On October 1, 1991, plaintiff George L. Chadwell ("Chadwell") was treated by his physician with a product known as Orcolon, a synthetic eye gel manufactured by defendant Optical Radiation Corporation ("ORC"). Chadwell's treatment with Orcolon took place during surgery to extract a cataract from his right eye and insert an intraocular lens. Orcolon was subsequently recalled from the market due to reports of injuries associated with its use.

Chadwell filed this action against ORC on September 23, 1993. Subject matter jurisdiction was predicated on 28 U.S.C. § 1332, Chadwell being a citizen of Indiana, and ORC being a California corporation with its principal place of business in California. In his complaint, Chadwell alleged injuries traceable to Orcolon, and asserted the following state law claims: negligence (Count I), negligence *per se* (Count II), misrepresentation (Count III), strict liability (Count IV), fraud/misrepresentation (Count V), and breach of implied warranty (Count VI). He sought compensatory and punitive damages.

On February 22, 1994, ORC moved for summary judgment. ORC argued that there was no genuine issue of material fact and that Chadwell's claims were preempted by federal law. ORC relied on a provision of the Medical Device Amendments of 1976 (the "MDA"), 21 U.S.C. §§ 360c–360*l*, to the Food, Drug and Cosmetic Act of 1938 (the "FDCA"), 21 U.S.C. §§ 301–395, which states, in relevant part:

[N]o State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement—

(1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and

(2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter.

21 U.S.C. § 360k(a). ORC provided evidence that Orcolon was a "device" within the mean-

ing of § 360k(a), specifically a Class III medical device, approved for distribution by the Food and Drug Administration (the "FDA" or the "Secretary") on March 29, 1991. ORC pointed to numerous decisions holding that state law tort claims against manufacturers of Class III medical devices are preempted. *See, e.g., Duncan v. Iolab Corp.,* 12 F.3d 194 (11th Cir.1994); *Stamps v. Collagen Corp.,* 984 F.2d 1416 (5th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 86, 126 L.Ed.2d 54 (1993); *King v. Collagen Corp.,* 983 F.2d 1130 (1st Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 84, 126 L.Ed.2d 52 (1993); *Slater v. Optical Radiation Corp.,* 961 F.2d 1330 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 327, 121 L.Ed.2d 246 (1992); *Kemp v. Pfizer, Inc.,* 835 F.Supp. 1015 (E.D.Mich.1993).[1]

In response, Chadwell argued that he could not oppose summary judgment without discovery, which had been stayed by the Court's order of March 16, 1994. Chadwell argued that discovery would enable him to defeat summary judgment on the grounds: (1) that the product manufactured by ORC and used in his treatment was not the same "Orcolon" that the FDA had approved, and (2) that ORC had engaged in fraud on the FDA and the public.

To ensure that Chadwell would have a fair opportunity to oppose summary judgment, the Court ordered on September 12, 1994, that he be allowed to conduct discovery. Both parties thereafter supplemented their original briefs on the pending motion, which is now ripe for resolution. For the reasons discussed below, the motion is GRANTED.

### SUMMARY JUDGMENT STANDARDS

■ Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is genuine only if the evidence is such that a reasonable jury

could return a verdict for the opposing party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A disputed fact is material only if it might affect the outcome of the suit in light of the substantive law. *Id.*

■ Although the moving party has the initial burden to show the absence of genuine issues of material fact, *see Schroeder v. Barth, Inc.,* 969 F.2d 421, 423 (7th Cir.1992), once that burden—which, in the case of a defendant, is not a burden to produce evidence negating the plaintiff's claims, *see Green v. Whiteco Indus., Inc.,* 17 F.3d 199, 201 & n. 3 (7th Cir.1994)—is met, the opposing party must demonstrate the existence of a genuine issue of material fact, *see Hong v. Children's Mem. Hosp.,* 993 F.2d 1257, 1261 (7th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1372, 128 L.Ed.2d 48 (1994), through appropriate citation(s) to evidentiary materials. *See* S.D.Ind.L.R. 56.1; *Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 923–24 (7th Cir.1994).

### *DISCUSSION*

### *ORCOLON FORMULA CHANGE*

The Court turns first to Chadwell's argument that the product used in his treatment was not the "Orcolon" approved for sale by the FDA. The only evidence he cites in support of this argument is testimony before a congressional subcommittee by a member of its staff. *See* Pl.'s Ex. A (*FDA and the Medical Device Industry: Hearings Before the Subcomm. on Oversight and Investigations of the House Comm. on Energy and Commerce,* 102nd Cong., 2nd Sess. 74 (1992)). The subject of this testimony was the FDA's regulation of medical devices, an area of concern to the subcommittee as a result of injuries associated with certain devices approved by the FDA. *Id.* at 1, 71. The staffer, Thomas Dorney, testified on behalf of the entire subcommittee staff, summarizing what they had learned through interviews with FDA officials and review of FDA documents. *Id.* at 71–72.

---

1. Other significant authorities supporting ORC's position have appeared since, including *Michael v. Shiley, Inc.,* 46 F.3d 1316 (3rd Cir.1995); *Martello v. Ciba Vision Corp.,* 42 F.3d 1167 (8th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 2614, 132 L.Ed.2d 857 (1995); *Mendes v. Medtronic, Inc.,* 18 F.3d 13 (1st Cir.1994); *Brown v. Medtronic, Inc.,* 852 F.Supp. 717 (S.D.Ind.1994).

With respect to Orcolon, Dorney testified that in August of 1991 safety concerns prompted the FDA to inspect ORC's manufacturing facility in Puerto Rico. *Id.* at 73. He testified that this inspection found, among other things, that ORC "had changed the formulation for Orcolon without submitting the required PMA [premarket approval] supplements advising the FDA of the changes." *Id.* at 74.

▇ As ORC points out, this testimony is hearsay. Chadwell suggests it falls within the exception for public records and reports, *see* Fed.R.Evid. 803(8), but this overlooks that the evidence before the Court is not a public report, but testimony about such a report. The Court cannot discern, moreover, whether the testimony is based on the report itself or on statements about the report made by an FDA official to a member of the subcommittee staff. There may be several layers of hearsay involved. *Cf. Engebretsen v. Fairchild Aircraft Corp.*, 21 F.3d 721, 733 (6th Cir.1994). The Court notes further that the broader context here is a congressional inquiry into the extent of the FDA's responsibility for injuries attributed to Orcolon and other medical devices it had approved. *See* Pl.'s Ex. A at 1. Under the circumstances, the standard of trustworthiness set forth in Rule 803(8) calls for something more than a second or third-hand reference to FDA findings.[2]

Additionally, the significance of the alleged formula change is unclear. Chadwell does not point to any evidence that it was the formula change (the nature and magnitude of which he does not describe) that made Orcolon unsafe. He also fails to point to evidence that the gel with which he was treated was manufactured according to the changed formula. In sum, although the Court recognizes the appeal of the argument that a manufacturer distributing an unapproved device in the guise of an approved device should not be entitled to claim preemption, the evidence cited by Chadwell does not create a genuine issue of material fact that such was the case here.

### FRAUD

Chadwell's next argument is that ORC committed fraud in connection with the premarket approval and marketing of Orcolon. According to Chadwell, ORC withheld from the FDA and the public information about problems encountered in manufacturing Orcolon, and information about injuries allegedly caused by Orcolon.

Chadwell's argument that his fraud claim is not preempted is based on *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992), in which a plurality of the Supreme Court interpreted the preemptive scope of a provision of the Cigarette Labeling and Advertising Act, 15 U.S.C. §§ 1331–1340, which stated: "No requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labelled in conformity with the provisions of this Act." 505 U.S. at 515, 112 S.Ct. at 2617. The plurality reasoned that fraudulent misrepresentation claims based on allegedly false statements of material fact in cigarette advertisements were not preempted, because "[s]uch claims are not predicated on a duty 'based on smoking and health' but rather on a more general obligation—the duty not to deceive." *Id.* at 528–29, 112 S.Ct. at 2623–24.

The preemption in this case, as in *Cipollone,* is express preemption; thus the precise language of the preemption provision, and the precise nature of the state law claim, are of critical importance. *See id.* at 517–18, 522–24, 112 S.Ct. at 2618, 2621. *Cipollone* depended on such particulars, and was not the last word on preemption of all fraud claims, as is demonstrated by a recent Supreme Court decision finding a statutory fraud claim preempted under the Airline Deregulation Act. *See American Airlines, Inc.*

**2.** By the same measure, the Court finds that plaintiff's Exhibit G, apparently an excerpt from a document identified as "FDA Quarterly Activities Report, First Quarter, Fiscal Year 1992," which contains a brief summary of the findings of the Puerto Rico inspection, including the finding that the Orcolon manufacturing process had been changed without FDA approval, is inadmissible hearsay.

*v. Wolens,* —— U.S. ——, ——–——, 115 S.Ct. 817, 823–24, 130 L.Ed.2d 715 (1995).

■■■ Under § 360k(a), preemption applies to any state-imposed requirement that is different from, or in addition to, any MDA requirement that is applicable to Orcolon and related to safety or effectiveness or any other matter.[3] The fraud claim at issue would constitute a state-imposed requirement that ORC refrain from making reckless or intentional misrepresentations of material fact about the manufacturing and safety of Orcolon. *See Adoptive Parents of M.L.V. v. Wilkens,* 598 N.E.2d 1054, 1058 (Ind.1992) (outlining the elements of fraud); *Midwest Commerce Banking Co. v. Elkhart City Centre,* 4 F.3d 521, 524 (7th Cir.1993) (explaining that omissions are actionable as fraud when the circumstances are such that a failure to communicate a fact induces a belief in its opposite).

■■■ Under the MDA and its implementing regulations, the manufacturer of a Class III device is subject to extensive disclosure requirements. For example, the application for premarket approval must contain full disclosure concerning the manufacturing and safety of the device. *See* 21 U.S.C. § 360e(c)(1)(A) & (C); 21 C.F.R. § 814.20(b)(4)(v) & (6)–(8). Any omissions must be justified. *See* 21 C.F.R. § 814.20(d). A false statement of material fact is grounds for denial of the application, *see* 21 C.F.R. § 814.45(a)(1), and for civil and criminal penalties. *See* 21 U.S.C. §§ 331(q)(2), 333(a) & (g). After a device is approved, if the Secretary (in consultation where necessary with scientific advisors) finds that the application contained a false statement of material fact, approval is withdrawn. 21 U.S.C.

§ 360e(e)(1)(C). When a device is marketed, the manufacturer must report to the Secretary any information reasonably suggesting that its device has malfunctioned or caused serious injury. 21 U.S.C. § 360i(a)(1)(A) & (B); 21 C.F.R. § 803.24.

■■■ To the extent that Chadwell is claiming that ORC had a duty to disclose information about the manufacturing or safety of Orcolon to persons other than the FDA, he is seeking to impose a state law requirement "in addition to" MDA requirements. This claim is preempted. To the extent he is claiming that ORC had a duty to make truthful disclosures of material fact to the FDA, he is seeking to impose a state law requirement "different from" MDA requirements, as such a claim would entail a jury's assessment of materiality rather than the FDA's. This claim is also preempted.

Other courts that have considered state law fraud claims against manufacturers of Class III devices have held them preempted. *See Reeves v. AcroMed Corp.,* 44 F.3d 300, 306–07 (5th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 2251, 132 L.Ed.2d 258 (1995); *Michael v. Shiley, Inc.,* 46 F.3d 1316, 1328–29 (3rd Cir.1995); *King v. Collagen Corp.,* 983 F.2d 1130, 1136, 1139–40 (1st Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 84, 126 L.Ed.2d 52 (1993); *Mitchell v. Collagen Corp.,* 870 F.Supp. 885, 896–97 (N.D.Ind. 1994); *Talbott v. C.R. Bard, Inc.,* 865 F.Supp. 37, 52 (D.Mass.1994); *Kemp v. Pfizer, Inc.,* 835 F.Supp. 1015, 1021–22 (E.D.Mich.1993). *But see Ministry of Health v. Shiley,* 858 F.Supp. 1426, 1440 (C.D.Cal.1994) (reasoning that *Cipollone* compels finding of no preemption).

3. Chadwell argues that because there are no MDA requirements specifically applicable to Orcolon there can be no preemption under § 360k(a). This argument would seem to be supported by an FDA regulation stating that preemption only occurs when the FDA "has established specific counterpart regulations or there are other specific requirements applicable to a particular device under the act." 21 C.F.R. § 808.1(d). However, upon considering this regulation, the courts in *Michael,* 46 F.3d at 1324, *Martello,* 42 F.3d at 1169, and *Stamps,* 984 F.2d at 1423–24, all held that requirements applicable *generally* to Class III devices give rise to

§ 360k(a) preemption. As the *Michael* court explained: "The absence of regulations relating specifically to heart valves is not dispositive as long as the Shiley valve was subject to 'any requirement applicable under the [MDA] to the device.'" 46 F.3d at 1324. The court then found that requirements applicable to all Class III devices, including premarket approval, labelling requirements, and manufacturing requirements, constituted proper bases for preemption under § 360k(a). *Id.* This Court agrees, and holds that the absence of regulations relating specifically to Orcolon does not preclude preemption of Chadwell's state law tort claims.

The court in *Michael* held that a claim of fraud on the FDA was preempted because it would amount to a reexamination under state law standards of the FDA's approval of the device in question, and because it would conflict with authorities holding that violations of the FDCA do not create private rights of action. 46 F.3d at 1328–29. The court went on, however, to find that a claim of fraud based on allegedly false statements made directly to surgeons and cardiologists in letters and promotional materials was not preempted. *Id.* at 1329–31. This holding turned on the fact that the FDA was not, at the time in question, regulating device manufacturers' promotional representations to the medical community. *Id.* at 1330–31. Assuming this portion of *Michael* is correct, it has no application here, as Chadwell has not pointed the Court to any promotional materials authored by ORC or shown them to be materially false.[4]

### OTHER CLAIMS

Chadwell's other claims are also preempted. The negligence, strict liability, and implied warranty claims would impose state law standards on the testing, manufacturing, labelling and safety of Orcolon, all areas subject to extensive MDA requirements. *See* 21 C.F.R. § 814 (setting forth requirements for premarket approval, including FDA review of testing, manufacturing, labelling and safety); 21 C.F.R. § 820 (setting forth requirements for manufacturing, quality control and documentation); 21 C.F.R. § 801 (setting forth requirements for labelling). The negligence *per se* claim would incorporate the federal labelling standards set forth in 21 U.S.C. § 352, but would turn on the jury's application of those standards. Regarding this claim, the Court finds persuasive the following statement from a recent First Circuit decision:

> One way to ensure that a factfinder applies a standard not adding to or differing from FDA regulations is to supplant the common law standard with FDA's requirements. We find nothing to support that Congress intended such a radical, unwieldy

form of preemption, however, particularly where Congress did not intend to create a private right of action under the Federal Food, Drug, and Cosmetic Act.

*Mendes v. Medtronic, Inc.,* 18 F.3d 13, 19 n. 4 (1st Cir.1994); *see also* 21 U.S.C. § 337; *Pacific Trading Co. v. Wilson & Co.,* 547 F.2d 367, 370 (7th Cir.1976).

### CONCLUSION

For all the above reasons, ORC's motion for summary judgment is GRANTED.

IT IS SO ORDERED.

---

4. This is fatal to both Count III and Count V of the complaint, which contain nearly identical allegations of misrepresentations made directly

to the medical community and the public. Chadwell was given the chance to support these allegations through discovery and failed to do so.