927 P.2d 1355

STATE of Hawai'i, Petitioner–Appellee,

v.

Manuel JHUN, Respondent–Appellant.

No. 16139.

Supreme Court of Hawai'i.

Oct. 11, 1996.

James M. Anderson, Deputy Prosecuting Attorney, on the brief, Kailua, for petitioner-appellee.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

NAKAYAMA, Justice.

After a jury trial, defendant-appellant Manuel Jhun (Jhun) was found guilty of assault in the second degree in violation of Hawai'i Revised Statutes (HRS) § 707–711(1)(d) (1993). Through an opinion filed on December 5, 1995, the Intermediate Court of Appeals of Hawai'i (ICA) vacated the judgment and remanded the case for a new trial. *State v. Jhun*, No. 16139, slip op. (Ct.App. December 5, 1995). In so holding, the ICA addressed only one of the issues that Jhun raised in his appeal, namely, whether the trial court had erred by applying the hearsay rule, precluding Jhun from cross-examining a police officer about the contents of an absent witness's statements that the police officer had written down in his investigative report. The police officer's testimony about the absent witness's statements might have supported Jhun's assertion that he had been justified in stabbing his victim as a means of defending his brother, whom a group of men had allegedly attacked. Although the police officer's testimony about the absent witness's statements constituted hearsay, the ICA held that it was presumptively admissible pursuant to Hawai'i Rules of Evidence (HRE) Rule 803(b)(8)(C) (1993), the public records and reports exception to the hearsay rule. In response to the State of Hawai'i's (the prosecution) petition, we granted certiorari to review the ICA's holding, and, for the reasons set forth below, we hold that the trial court did not err in concluding that the police officer's testimony about the absent witness's statements constituted inadmissible hearsay. We therefore reverse the ICA's decision and order the ICA's opinion depublished. Fur-

thermore, after reviewing the remaining issues that Jhun has raised in his appeal, we affirm Jhun's conviction of assault in the second degree.

## I. *BACKGROUND*

On May 19, 1990, an altercation arose on Maunakea Street in the Chinatown area of Honolulu involving, among other people, two sets of brothers: (1) Ronald Jhun (Ronald) and the defendant Jhun; and (2) Cornelius Alston (Cornelius) and Michael Alston (Michael). During the altercation, Jhun stabbed Cornelius in the arm with a "butterfly" knife. Consequently, a grand jury indicted Jhun for assault in the second degree in violation of HRS § 707–711(1)(d)[1] and possession of a switchblade knife in violation of HRS § 134–52 (1993).[2]

During his trial, Jhun admitted that he had stabbed Cornelius in the arm, but claimed he had been justified in stabbing Cornelius in order to defend his brother, Ronald, because at that time a group of five or six men, including Cornelius and Michael, had suddenly attacked Ronald and were beating him. Jhun insisted that the group of men including Cornelius and Michael had initiated the confrontation. One of the men in the group had a "butterfly" knife, and Jhun feared that his brother Ronald's life was in jeopardy. Jhun tried to rescue Ronald by punching the attackers, but he was not immediately successful. As the scuffle continued, Jhun suddenly noticed that one of the attackers had dropped the "butterfly" knife. Jhun quickly grabbed the knife and stabbed Cornelius in the arm. Cornelius and the attackers immediately stopped beating Ronald and began surrounding Jhun, who turned and ran away from the scene. Ronald's testimony essentially supported Jhun's version of how the events had transpired.

In contrast to Jhun's and Ronald's testimony, Cornelius testified that he, his brother Michael, and two friends had approached Jhun and Ronald and had asked them why Ronald was hassling Cornelius's brother. In response, Ronald initiated the confrontation by pushing Cornelius in the chest, and Cornelius retaliated by pushing Ronald back. Then Jhun stabbed Cornelius with a "butterfly" knife, after which Jhun turned and ran away from the scene. Cornelius chased after Jhun.

Michael was not available to testify at Jhun's trial. However, two Honolulu Police Department (HPD) officers testified with respect to some of the events. At the time Jhun was fleeing the scene of the altercation, HPD officers Robert Cravalho (Officer Cravalho) and Brian Taniguchi (Officer Taniguchi) were approximately one block away. According to Officer Cravalho's testimony, he had noticed Jhun running toward Officer Taniguchi and himself with a knife in his hand. Both officers drew their revolvers and Officer Cravalho told Jhun to drop the knife. Jhun placed the knife on the street, but continued running away. After chasing Jhun, Officer Cravalho and Officer Taniguchi eventually subdued and arrested him.

While investigating Cornelius's stabbing, Officer Cravalho interviewed Cornelius's brother, Michael, approximately one hour and forty-five minutes after the events that had culminated in Jhun's arrest. Based on the interview with Michael about how the altercation had taken place, Officer Cravalho transcribed Michael's oral statements by hand onto three pages of HPD–252 forms. Michael read the statements, as transcribed

---

1. HRS § 707–711(1)(d) (1993) provides the following:

§ **707–711 Assault in the second degree.** (1) A person commits the offense of assault in the second degree if:

. . . .

(d) The person intentionally or knowingly causes bodily injury to another person with a dangerous instrument; . . . .

2. HRS § 134–52 (1993) provides:

§ **134–52 Switchblade knives; prohibitions; penalty.** (a) Whoever knowingly manufactures, sells, transfers, possesses, or transports in the State any switchblade knife, being any knife having a blade which opens automatically (1) by hand pressure applied to a button or other device in the handle of the knife, or (2) by operation of inertia, gravity, or both, shall be guilty of a misdemeanor.

(b) Whoever knowingly possesses or intentionally uses or threatens to use a switchblade knife while engaged in the commission of a crime shall be guilty of a class C felony.

by Officer Cravalho, and signed an attestation stating that the statements were true and correct. Officer Cravalho's transcription of Michael's statements in the HPD–252 forms reads, in pertinent part, as follows:

On 05–19–90, at about 0245 hours, I was on the north/west corner of Smith [Street]/Hotel [Street]. [Jhun] summoned me over and was asking about my brother [Cornelius]. [Ronald] approached me from the front and began to swing a butterfly knife around, saying "You want some? You want to die?" Apparently [Ronald] thought I was starting a problem with [Jhun]. I was confused at [Ronald]'s behavior. [Ronald] then took a "poke" at me. I stepped back to avoid injury. [Jhun] grabbed [Ronald] telling him to calm down. He then walked away. [Jhun] returned to me saying he was sorry for [Ronald]'s behavior. Prior to [Jhun's] apologizing, I went to my vehicle and took out a pool cue to defend myself. After [Jhun] apologized, I calmed down and put away my pool cue. HPD confronted me at this point, questioning me about the pool cue. I told them what happened but didn't care too much about it. I figure blow it off. I got into my car with my brother [Cornelius]. We travelled north on Smith [Street], west on Pauahi Street, and south on Maunakea [Street]. Just prior to Hotel [Street] I saw [Ronald] "swinging" the butterfly knife at two other black males. These males were backing away from [Ronald]. Again [Jhun] was there. He was trying to keep the black males away from [Ronald]. We were stopped at the red light and the commotion was on the south/west corner. When the [light] turned green, I proceeded through the intersection and stopped to help. My brother jumped out and was immediately confronted by [Ronald]. My brother and the other black males "pounded" on [Ronald]. [Jhun] tried to break up the fight. My brother and [Jhun] began to fight. [Ronald] went down and the two black males were still punching him. [Jhun] went over to [Ronald] and took the knife from him. He then began waving it in the air. It appeared as though he was trying to keep my brother away. Before waving [the] knife around, [Jhun] had already "cut" my brother's right arm with a downward motion. He was then waving the knife. I took off in my car to go back to Smith [Street] and Hotel [Street] where HPD was. By the time I got there, my brother and [Jhun] were already there. [Jhun] was already hand cuffed [sic]. While talking with HPD I noticed [Ronald] walking east on the south side of Hotel [Street], approaching Smith [Street]. I pointed him out and HPD stopped and arrested him.

After direct examination of Officer Cravalho, Jhun's counsel cross-examined Officer Cravalho and attempted to elicit testimony from Officer Cravalho regarding Michael's transcribed statements in the HPD–252 forms. The prosecution objected, asserting that Officer Cravalho's testimony about Michael's transcribed statements in the HPD–252 forms would constitute inadmissible hearsay. The colloquy between the trial judge and Jhun's counsel regarding his attempt to question Officer Cravalho about Michael's written statements in the HPD–252 forms included the following:

[JHUN'S COUNSEL]: Okay. In your investigation, Officer, when you were talking with Michael Alston, did he relate to you that he had driven a car—

[THE PROSECUTION]: Objection, Your Honor. This is calling for—

THE COURT: It does call for hearsay.

. . . .

[JHUN'S COUNSEL]: . . . . My question was intended to be did Mr. Alston tell you that he was driving a car when he approached this intersection. Merely to put him in the car at the intersection to start with—

THE COURT: Basically that calls for hearsay.

. . . .

THE COURT: You may ask the officer what he did but your question was did Michael Alston relate to you.

[JHUN'S COUNSEL]: I under[stand], Your Honor, but not for the purpose of the truth of the matter but hearsay based on this officer's observation which led to the charging of the defendant and by getting

into the facts of what physical actions Mr. Michael Alston took does not get into the question of hearsay as to what Michael Alston said.

THE COURT: You're asking him what Michael Alston said. You can ask the officer based on what he said. You didn't ask him what he said.

[JHUN'S COUNSEL]: But I think that the fact Mr. Alston's report was included in this officer's 11 page report then takes it out of the hearsay exception and make's [sic] it—

THE COURT: The Court disagrees.

. . . .

[JHUN'S COUNSEL]: Officer, did you learn an [sic] a result of your investigation that the two Alston brothers had attacked Mr. Ronald Jhun in this area that you had mentioned on Maunakea and Smith?

[THE PROSECUTION]: Objection.

THE COURT: The Court will sustain the objection.

. . . .

[JHUN'S COUNSEL]: And am I to understand that I'm not allowed—he had related in his police report what he has verified in terms of the physical actions of the individuals that night?

THE COURT: That's correct because he cannot say unless he saw it. Anything else would be hearsay.

[JHUN'S COUNSEL]: He can indicate what was related to him in terms of physical actions that does not require hearsay?

THE COURT: No.

. . . .

THE COURT: If he says—if Mr. Alston says he attacked or they were attacked, that is hearsay.

[JHUN'S COUNSEL]: I'm not asking him to relate to what Mr. Alston said, but in his investigation he is putting together the facts of what happened and he fished out through this investigation and put into his report. Two males approach two other males and together those two males—and they defended such and such.

That does not fall under the hearsay category.

THE COURT: The Court has ruled[.]

The jury eventually convicted Jhun of assault in the second degree.[3] Jhun's timely appeal followed.

As previously stated, the ICA vacated the judgment against Jhun and remanded this case for a new trial, holding that Officer Cravalho's testimony about Michael's statements within the HPD–252 forms was presumptively admissible as evidence pursuant to HRE Rule 803(b)(8)(C), the public records and reports exception to the hearsay rule. The prosecution filed a timely petition for writ of certiorari on December 15, 1995, which we granted by an order filed on December 22, 1995.

## II. *DISCUSSION*

On appeal, Jhun has challenged his conviction through the following assertions: (1) the trial court erred by not striking from the record the arresting police officer's testimony that, as Jhun was fleeing just prior to the arrest, he was prepared to shoot Jhun; (2) the trial court erred by refusing to prepare findings of facts and conclusions of law when the trial court ruled that Officer Cravalho's testimony about the statements in the HPD–252 forms was inadmissible hearsay; (3) the trial court erred by denying Jhun's motion for a mistrial after the victim violated an earlier evidentiary ruling by mentioning one of Jhun's prior bad acts; (4) the trial court erred by not allowing Jhun to ask the victim, during cross-examination, where his brother lived; (5) the trial court erred by not allowing Jhun to present a witness who would have testified that the victim had made a prior inconsistent statement with respect to identifying Jhun as his attacker; (6) the trial court erred by denying Jhun's motion for a mistrial after the prosecution had asked Jhun's brother whether he had been arrested on the night of the stabbing; (7) the jury misunderstood or completely ignored the tri-

---

**3.** Because a "butterfly" knife is not a switchblade for the purposes of HRS § 134–52, *In re John Doe,* 73 Haw. 89, 828 P.2d 272 (1992), the prose- cution dismissed the charge of possessing a switchblade in violation of HRS § 134–52.

al court's instructions with respect to Jhun's right to use deadly force to protect his brother; (8) the trial court erred and abused its discretion by denying Jhun's motion for "judgment notwithstanding the verdict" because the prosecution's evidence was insufficient to sustain the conviction. After reviewing the record and the arguments of Jhun and the prosecution, we summarily affirm the trial court's rulings with respect to all issues except the following two, which we specifically address in this opinion: (A) whether the cross-examination testimony of Officer Cravalho was inadmissible hearsay; (B) whether the trial court erred by denying Jhun's motion for "judgment notwithstanding the verdict" because the prosecution's evidence was insufficient to sustain the conviction.

## A. *THE TRIAL COURT'S EVIDENTIARY RULING*

The ICA held that, pursuant HRE Rule 803(b)(8)(C), Officer Cravalho's testimony regarding Michael's statements in the HPD–252 forms was presumptively admissible as evidence. We disagree.

"All relevant evidence is admissible, except as otherwise provided by the Constitutions of the United States and the State of Hawaii, by statute, by these rules, or by other rules adopted by the supreme court." HRE Rule 402 (1993). However, "[h]earsay is not admissible except as provided by these rules, or by other rules prescribed by the Hawaii supreme court, or by statute." HRE Rule 802 (1993). Hearsay "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." HRE Rule 801(3) (1993).

■ An exception to the hearsay rule allows the admission of public records and documents:

**Rule 803   Hearsay exceptions; availability of declarant immaterial.** The fol-

lowing are not excluded · by the hearsay rule, even though the declarant is available as a witness:

. . . .

(b)   Other exceptions.

. . . .

(8) *Public records and reports* . . . . (C) in civil proceedings and against the government in criminal cases, *factual findings resulting from an investigation made pursuant to authority granted by law,* unless the sources of information or other circumstances indicate lack of trustworthiness.

. . . .

HRE Rule 803(b)(8)(C) (1993) (emphasis added). Despite this exception to the hearsay rule, the trial court did not permit Officer Cravalho to testify during cross-examination about Michael's statements in the HPD–252 forms, and it is this evidentiary decision that we review.

[D]ifferent standards of review must be applied to trial court decisions regarding the admissibility of evidence, depending on the requirements of the particular rule of evidence at issue. When application of a particular evidentiary rule can yield only one correct result, the proper standard for appellate review is the right/wrong standard. However, the traditional abuse of discretion standard should be applied in the case of those rules of evidence that require a "judgment call" on the part of the trial court.

*Kealoha v. County of Hawai'i,* 74 Haw. 308, 319–20, 844 P.2d 670, 676 (1993), *reconsideration denied,* 74 Haw. 650, 847 P.2d 263 (1993). The trial court did not have to make a "judgment call" when it determined that Officer Cravalho's testimony about Michael's statements in the HPD–252 forms was inadmissible hearsay that failed to qualify as an exception to the hearsay rule under HRS § 803(b)(8)(C).[4] Therefore, we review the

---

4.   The trial court ruled that Officer Cravalho's testimony about the contents of the HPD–252 forms failed to meet the threshold requirements of the exception to the hearsay exclusionary rule under HRE Rule 803(8)(C), namely that the proffered evidence must consist of "[r]ecords, reports, statements, or data compilations, in any

form, of public offices or agencies, setting forth . . . factual findings resulting from an investigation made pursuant to authority granted by law[.]" HRE Rule 803(8)(C). As a result, the trial court did not have to make a "judgment call" with respect to whether "the sources of information or other circumstances indicate[d]

trial court's ruling with respect to hearsay and HRE Rule 803(b)(8)(C) according to the right/wrong standard.

"Since Rule 803(b)(8)(C), HRE, is identical to Rule 803(8)(C) of the Federal Rules of Evidence, we [may] refer to federal case law for assistance in construing our Rule." *Touche Ross Ltd. v. Filipek,* 7 Haw.App. 473, 485–86, 778 P.2d 721, 729 (1989). Accordingly, we may also refer to case authority from another jurisdiction whose public records hearsay exception is identical to FRE Rule 803(8)(C). For example, the public records hearsay exception under the North Dakota Rules of Evidence (NDRE) Rule 803(8)(iii), "is a verbatim adoption of Rule 803(8)(C) of the Federal Rules of Evidence[.]" *Victory Park Apartments, Inc. v. Axelson,* 367 N.W.2d 155, 161 (N.D.1985). In a civil proceeding [5] in North Dakota, in which a landlord sued a tenant for the damage that a fire had caused in her apartment, the Supreme Court of North Dakota held that a trial court had erred by allowing a police officer to testify about statements made by the tenant's boyfriend, Melvin Thompson, that the police officer had recorded in his police report on the morning after the fire. *Id.* at 162. The *Axelson* court initially determined that the police report itself was not admissible as evidence under the public records hearsay exception, because, rather than containing the factual findings of the police officer, as the public record hearsay exception requires, the police report merely contained Melvin Thompson's out-of-court statements from his interrogation with the police officer:

> The report in this case … contains no … findings or conclusions of the investigating officer; it is a summary of Melvin Thompson's interrogation. [The police officer] did not record any findings or conclusions drawn from his investigation or interrogation of Thompson. Even under the liberal interpretation of "factual findings" embodied in [other case authority], the report in

this case simply does not fall within the Rule 803(8)(iii) [public records hearsay exception]. We conclude that the police report was not admissible under Rule 803(8)(iii).

*Id.* (citation omitted). In addition to holding that the trial court had erred by admitting the police report into evidence, the *Axelson* court went on to address whether the trial court had also erred by admitting into evidence the testimony of the investigating police officer "regarding Thompson's statements included in the police report[.]" *Id.* Without a detailed analysis, the *Axelson* court quickly concluded that "[t]he hearsay character of this testimony [wa]s obvious." *Id.* Therefore, "[i]t was error to permit [the investigating officer] to testify regarding the statements made by Thompson." *Id.*

Similarly, in a product liability lawsuit involving a particular medical device, a federal district court concluded that a witness's testimony did not satisfy the public records hearsay exception under FRE Rule 803(8)(C) because the witness's testimony consisted of what the witness and his staff had learned about the regulation of medical devices through, among other things, a "review of F[ood and Drug Administration (FDA) ] documents." *Chadwell v. Optical Radiation Corp.,* 902 F.Supp. 830, 833 (S.D.Ind.1995). In response to the plaintiff's assertion that the witness's testimony about the FDA documents fell within the hearsay exception for public records and reports under FRE Rule 803(8), the *Chadwell* court explained that the plaintiff's assertion "overlook[ed] that the evidence before the Court [wa]s not a public report, but *testimony* about such a report." *Id.* at 834 (emphasis added). Under such circumstances, "[t]here may be several layers of hearsay involved." *Id.*

▪ Likewise in the instant case, Jhun's assertion, that Officer Cravalho's cross-exam-

---

[a] lack of trustworthiness." HRE Rule 803(8)(C). If, instead, the trial court had based its ruling on the "judgment call" of whether the sources of information or other circumstances indicated a lack of trustworthiness, then we would review the trial court's ruling according to the abuse of discretion standard.

5. In addition to being admissible under HRE Rule 803(b)(8)(C) when offered as evidence "against the government in criminal cases[,]" certain public records, reports, statements, or data compilations of public agencies may also qualify for admissibility under HRE Rule 803(b)(8)(C) "in civil proceedings[.]"

ination testimony about Michael's statements in the HPD–252 forms was admissible under HRE Rule 803(b)(8)(C), overlooks that the proffered evidence before the trial court was not Officer Cravalho's factual findings, conclusions or opinions in the HPD–252 forms, but rather, the proffered evidence was Officer Cravalho's *testimony* about Michael's statements in the HPD–252 forms. With respect to the common law public records exception to the hearsay rule, Professor Wigmore states that the public records exception applies only to written statements:

> The statement must be in writing; this is not doubted. The policy of this limitation is unquestionable; for a written statement offers incomparable advantages with respect to accuracy of use and permanency of service; and since official records are commonly preserved after the death or retirement of the officer, there is commonly no practical need ... of accepting oral statements.

5 J.H. Wigmore, Evidence in Trials at Common Law, § 1633(5), at 623 (1974) (footnotes omitted). Notwithstanding Professor Wigmore's requirement that public records must be "in writing," we acknowledge that, today, public offices or agencies have utilized modern technology to store informational records in, not just written form, but, many different forms of documents. *See, e.g.,* HRS § 92F–3 (1993) (" 'Government record' means information maintained by an agency in written, auditory, visual, electronic, or other physical form."). However, following the gist of Professor Wigmore's statement, we interpret the phrase "record, report, statement, or data compilation of a public office or agency" as not applying to the oral testimony of an employee of the public office or agency about such public informational documents. Instead, this phrase applies to a formal informational document that a public office or agency maintains in a written, auditory, visual, electronic or other physical document form.

■ We agree with the *Chadwell* court that, when a party attempts to introduce a witness's testimony about a public informational document into evidence instead of the

public informational document itself, there may be several layers of hearsay involved. *Chadwell,* 902 F.Supp. at 834. Jhun wanted to expose the trial court to the statements that Michael had made to Officer Cravalho, because Michael's statements might have tended to support Jhun's assertion that Cornelius was attacking Ronald in such a way as to put Ronald's life in danger, which, in turn, might have given Jhun justification for stabbing Cornelius under HRS § 703–305(1) (1993). However, Michael's statements to Officer Cravalho were hearsay, because they were out-of-court statements that Jhun offered into evidence to prove the truth of the matter asserted, i.e., that Jhun was justified in stabbing Cornelius. Furthermore, Officer Cravalho had transcribed Michael's statements into the HPD–252 forms, which constituted hearsay. Finally, rather than offering the HPD–252 forms into evidence, Jhun attempted in court to elicit Officer Cravalho's testimony about Michael's statements in the HPD–252 forms, which, under these circumstances, was an attempt to elicit hearsay. Without a hearsay exception for each of these three levels of hearsay, Officer Cravalho's testimony was inadmissible.

■ Indeed, even if Jhun had attempted to introduce the HPD–252 forms into evidence, rather than Officer Cravalho's testimony, Michael's statements within the HPD–252 forms would not be admissible pursuant to HRE Rule 803(b)(8)(C). Although the United States Supreme Court has held that FRE Rule 803(8)(C) allows for admission of public records and reports containing opinions and conclusions, *Beech Aircraft Corp. v. Rainey,* 488 U.S. 153, 169–70, 109 S.Ct. 439, 449–50, 102 L.Ed.2d 445 (1988), "the requirement that reports contain factual findings bars the admission of statements not based on factual investigation." *Id.* at 169, 109 S.Ct. at 449–50. Thus, cases from several jurisdictions indicate that when a police report simply records a witness's statement, absent a hearsay exception for the witness's statement, the police report cannot be admitted into evidence under an evidentiary rule similar to HRE Rule 803(b)(8)(C).[6]

---

**6.** *See Parsons v. Honeywell, Inc.,* 929 F.2d 901, 907, (2d Cir.1991) (holding that a witness's

Although conclusions and opinions may also be contained in the document to be admissible under Rule 803(8)(C)'s exception to the hearsay rule, a report must first be a set of factual findings. The factual findings in a report qualifying for a Rule 803(8)(C) exception to the hearsay rule must, however, be based upon the knowledge or observations of the preparer of the report. As stated in the Advisory committee Notes to Rule 803, in a hearsay situation, the declarant is, of course, a witness and neither this rule nor Rule 804 dispenses with the requirement of firsthand knowledge. It may appear from his statement or be inferable from circumstances. Additionally, the comments note that police reports have generally been excluded except to the extent to which they incorporate firsthand observations of the officer.

*Miller v. Field,* 35 F.3d 1088, 1091 (6th Cir. 1994) (citations, quotation marks, brackets and emphasis omitted). In *Miller,* a prison inmate brought a 42 U.S.C. § 1983 action against his camp supervisor and correctional officials, alleging that his camp supervisor and correctional officials were deliberately indifferent in failing to prevent inmates from sexually assaulting him, despite the fact that he had earlier apprised the supervisor and correctional officials that inmates had been threatening to assault him. However, upon the request of the defendants, the trial court

admitted three Michigan State Police investigative reports into evidence that contained statements from the victim, the alleged assailants, various witnesses, and the local prosecutor, some of which tended to show that the victim's allegations about the assault might not be true. Vacating and remanding for a new trial, the *Miller* court held that, while the portions of the police investigative reports containing firsthand knowledge, observations, and fact finding were admissible under FRE Rule 803(8)(C), the portions of the police investigative reports containing third persons' statements were not admissible:

> [T]he statements of the victim, the alleged assailants, and various witnesses, as well as any statements by the prosecutor regarding reasons for not pursuing criminal charges against certain individuals, contained hearsay information, not facts observed by the preparer of the police report....
>
> ....
>
> While a court may presume that a preparer of a report, under a duty to relate information, will perform the task required and formulate justified conclusions and reasonable opinions based on evidence actually observed by the preparer, no such presumption arises when the preparer relies on potentially untrustworthy hearsay

statement within a deputy sheriff's report was inadmissible hearsay, because, although other portions of the deputy sheriff's report might otherwise be admissible under FRE Rule 803(8), the witness's statement to the deputy sheriff constituted hearsay, and "[i]t [wa]s plainly not admissible merely because contained in a police report"); *Miller v. Field,* 35 F.3d 1088, 1091 (6th Cir.1994) (holding that various third persons' statements within a police report were not admissible pursuant to FRE Rule 803(8)(C) because the statements "contained hearsay information, not facts observed by the preparer of the police report"); *Miller v. Caterpillar Tractor Co.,* 697 F.2d 141, 144 (6th Cir.1983) (affirming a district court ruling regarding a police investigator's report that had been "offered as evidence under FRE 803(8)(C) and refused admission by the district court as 'untrustworthy' since the document [had] relied upon hearsay statements of the witnesses interviewed by the investigator"); *Colvin v. United States,* 479 F.2d 998, 1003 (9th Cir.1973) ("Entries in a police report based on an officer's observation a knowledge

may be admitted, but statements attributed to other persons are clearly hearsay, and are inadmissible[.]"); *Ramrattan v. Burger King Corp.,* 656 F.Supp. 522, 530 (D.Md.1987) (holding that a police officer's report containing witnesses' statements was not admissible under FRE Rule 803(8) because "it appear[ed] that the officer simply recorded comments of the witnesses he interviewed"); *Worster v. Watkins,* 140 N.H. 546, 669 A.2d 212, 216 (1995) (holding that a police detective's report containing a witness's statements was not admissible pursuant to New Hampshire's public records hearsay exception, because, rather than having written factual findings in the report, the detective had merely been "recording what [the witness had] told him"); *Kratz v. Exxon Corp.,* 890 S.W.2d 899, 905 (Tex. Ct.App.1994) (holding that written statements of two eyewitnesses within a police accident report did not qualify under the Texas public records hearsay exception because they "d[id] not constitute factual findings resulting from an investigation made pursuant to authority granted by law").

evidence from another individual under no duty to provide unbiased information.

The bulk of the Michigan State Police reports introduced as evidence at trial contains neither factual findings made by the report[s'] preparers nor conclusions and opinions based upon such factual findings. Instead, the reports are largely a recitation of statements of other individuals that fall under no other exception to the hearsay rule. Because those statements of the victim, the alleged assailants, other witnesses, and the local prosecutor are, therefore, hearsay within hearsay, that evidence should not have been placed before the jury in this case.

*Miller,* 35 F.3d at 1091–92 (emphases omitted).

Similarly in the instant case, the HPD–252 forms did not contain "factual findings" that Officer Cravalho based on his own investigation. Officer Cravalho did not record any of his own independent conclusions or opinions about his interview with Michael. Rather, the HPD–252 forms merely contained out-of-court statements that Michael had made to Officer Cravalho approximately one hour and forty-five minutes after the events that had culminated in Jhun's arrest. As a result, the HPD–252 forms lacked the typical characteristics of factual findings. Like the police reports at issue in *Miller,* the HPD–252 forms were merely a recitation of a third-party's out-of-court statements that fell under no other exception to the hearsay rule, and thus, the HPD–252 forms were not admissible under HRE Rule 803(b)(8)(C).

Accordingly, we hold that the trial court correctly ruled that Officer Cravalho's cross-examination testimony about Michael's statements in the HPD–252 forms was inadmissible hearsay.

### B.  *MOTION FOR JUDGMENT OF ACQUITTAL*

Jhun's motion for "judgment notwithstanding the verdict" was, in effect, a post-verdict motion for judgment of acquittal pursuant to Hawai'i Rules of Penal Procedure (HRPP) Rule 29(c). For the reasons stated below, we affirm the trial court's denial of Jhun's post-verdict motion for judgment of acquittal.

HRPP Rule 29(c) provides, in pertinent part, the following:

### Rule 29.   MOTION FOR JUDGMENT OF ACQUITTAL.

. . . .

**(c) Motion After Discharge of Jury.** If the jury returns a verdict of guilty or is discharged without having returned a verdict, a motion for judgment of acquittal may be made or renewed within 10 days after the jury is discharged or within such further time as the court may fix during the 10–day period. If a verdict of guilty is returned the court may on such motion set aside the verdict and enter judgment of acquittal. . . .

When reviewing a motion for judgment of acquittal, we employ the same standard that a trial court applies to such a motion, namely, whether, upon the evidence viewed in the light most favorable to the prosecution and in full recognition of the province of the trier of fact, the evidence is sufficient to support a prima facie case so that a reasonable mind might fairly conclude guilt beyond a reasonable doubt. *State v. Pone,* 78 Hawai'i 262, 265, 892 P.2d 455, 458 (1995); *State v. Alston,* 75 Haw. 517, 528, 865 P.2d 157, 164 (1994); *State v. Rocker,* 52 Haw. 336, 346, 475 P.2d 684, 690 (1970). Sufficient evidence to support a prima facie case requires "substantial evidence" as to every material element of the offense charged. *State v. Eastman,* 81 Hawai'i 131, 135, 913 P.2d 57, 61 (1996). "Substantial evidence" as to every material element of the offense charged is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion. *Id.* Under such a review, we give "full play to the right of the fact finder to determine credibility, weigh the evidence, and draw justifiable inferences of fact." *State v. Yabusaki,* 58 Haw. 404, 411, 570 P.2d 844, 848 (1977).

In order to convict Jhun of assault in the second degree as prohibited by HRS § 707–711(1)(d), the prosecution was required to prove beyond a reasonable doubt that Jhun intentionally or knowingly caused bodily injury to Cornelius with a dangerous

instrument. Among other evidence at trial, Cornelius testified that Jhun had stabbed him in the arm with a knife. In addition, when Jhun testified, he admitted that he had stabbed Cornelius in the arm with a knife.

■ With respect to the requisite state of mind for assault in the second degree, i.e., intentionally or knowingly, Jhun's testimony tended to show that Jhun acted intentionally or knowingly because Jhun said that he stabbed Cornelius in order to protect his brother Ronald. Moreover, based on all of the evidence adduced at trial, the jury could infer that Jhun acted intentionally or knowingly, because "[t]he mind of an alleged offender may be read from his acts, conduct and inferences fairly drawn from all the circumstances." *Eastman*, 81 Hawai'i 131, 141, 913 P.2d 57, 67 (affirming a conviction for abuse of a family or household member although the prosecution offered no direct evidence of the defendant's state of mind); *State v. Batson*, 73 Haw. 236, 254, 831 P.2d 924, 934 (1992) (holding that substantial circumstantial evidence supported a trial court's conclusion that a defendant had knowingly caused his son's death), *reconsideration denied*, 73 Haw. 625, 834 P.2d 1315 (1992).

■ Jhun attempted to justify his stabbing Cornelius by asserting that his actions were necessary in order to protect his brother Ronald pursuant to HRS § 703–305(1) (1993), which provides:

§ 703–305 Use of force for the protection of other persons. (1) Subject to the provisions of this section and of section 703–310, the use of force upon or toward the person of another is justifiable to protect a third person when:

(a) Under the circumstances as the actor believes them to be, the person whom the actor seeks to protect would be justified in using such protective force; and

(b) The actor believes that the actor's intervention is necessary for the protection of the other person.

Because the Hawai'i Penal Code does not designate the justification of use of force for the protection of another person as an affirmative defense, once a defendant adduces evidence of having used force for the protection of another person, "the defendant is entitled to an acquittal if the trier of fact finds that the evidence, when considered in light of any contrary prosecution evidence, raises a reasonable doubt as to the defendant's guilt." HRS § 701–115(2)(a) (1993). In other words, once a defendant has adduced evidence of having used force for the protection of another person, the burden is on the prosecution to disprove the facts showing that the defendant used force for the protection of another person, or to prove facts negativing the justification defense and to do so beyond a reasonable doubt. *Cf. State v. McNulty*, 60 Haw. 259, 262, 588 P.2d 438, 442 (1978) ("once evidence of justification has been adduced at trial, the prosecution has the burden of disproving, beyond a reasonable doubt, the facts constituting justification"), *cert. denied*, 441 U.S. 961, 99 S.Ct. 2406, 60 L.Ed.2d 1066 (1979), *overruled on other grounds, Raines v. State*, 79 Hawai'i 219, 225, 900 P.2d 1286, 1292 (1995).

■ Jhun adduced evidence of having used force for the protection of another person by introducing his own testimony and the testimony of his brother Ronald, asserting that Cornelius had initiated a physical confrontation with Ronald and that Ronald's life was in danger. Accordingly, the trial court properly instructed the jury regarding the defense of use of force for the protection of other persons.[7] Nevertheless, the jury found Jhun guilty of assault in the second degree.

■ As a rule, we presume that the jury followed all of the trial court's instructions. *State v. Knight*, 80 Hawai'i 318, 327, 909 P.2d 1133, 1142 (1996); *Sato v. Tawata*, 79 Hawai'i 14, 21, 897 P.2d 941, 948 (1995). In addition, because the jury found Jhun guilty of assault in the second degree, it is apparent that the jury chose not to believe the portions of Jhun's and Ronald's testimony in which they asserted that Cornelius had been the aggres-

7. Additionally, the trial court properly instructed the jury on the defense of use of force in self-

protection.

sor and that Jhun was justified in stabbing him. *Cf. Yabusaki,* 58 Haw. at 410–11, 570 P.2d at 848 (in which we "conclude[d] that the jury by finding the appellant guilty chose not to believe the appellant's testimony[.]").

As the trier of fact, the jury had the prerogative to believe Jhun when he admitted to the stabbing and to disbelieve Jhun when he asserted that he was merely trying to protect his brother. *Cf. Eastman,* 81 Hawai'i at 139, 913 P.2d at 65 ("It was within the trial court's prerogative to believe a [victim]'s prior inconsistent statements ... and to disbelieve [the victim]'s oral testimony in court."). Witnesses may be inaccurate, contradictory, and even untruthful in some portions of their testimony, and yet be entirely credible in other portions of their testimony. *Cf. State v. Bogdanoff,* 59 Haw. 603, 610, 585 P.2d 602, 606 (1978). In a jury trial, the jury is the trier of fact and, thus, is the sole judge of the credibility of the witnesses and the weight of the evidence. *State v. Tamura,* 63 Haw. 636, 637–38, 633 P.2d 1115, 1117 (1981) ("The jury, as the trier of fact, is the sole judge of the credibility of witnesses or the weight of the evidence."). When reviewing a jury trial, an appellate court will not pass upon the jury's decisions with respect to the credibility of witnesses and the weight of the evidence, because this is the province of the jury as the trier of fact. *Cf. Eastman,* 81 Hawai'i at 139, 913 P.2d at 65 ("An appellate court will not pass upon the trial judge's decisions with respect to the credibility of witnesses and the weight of evidence, because this is the province of the trial judge.").

The prosecution disproves a justification defense beyond a reasonable doubt when the trial court believes the prosecution's case and disbelieves the defendant's case. *State v. Gabrillo,* 10 Haw.App. 448, 456–57, 877 P.2d 891, 895 (1994); commentary to HRS § 701–115 (1993). It is evident from the jury's verdict that it believed Cornelius's testimony beyond a reasonable doubt and disbelieved Jhun's and Ronald's testimony with respect to their assertions that Jhun was protecting Ronald when he stabbed Cornelius.

Cornelius's testimony, as well as the relevant portions of Jhun's testimony, constituted credible evidence of sufficient quality and probative value to enable a person of reasonable caution to support the jury's conclusion that Jhun intentionally or knowingly stabbed Cornelius in the arm with a knife, without justification. Accordingly, substantial evidence supports every material element of assault in the second degree without justification. As a result, substantial evidence supports the jury's verdict.

Viewing the evidence in the light most favorable to the prosecution and in full recognition of the province of the trier of fact, we hold that the evidence was sufficient to support a prima facie case of assault in the second degree without justification, and thus, a reasonable mind might fairly conclude that Jhun was guilty beyond a reasonable doubt. Therefore, the trial court did not err when it denied Jhun's post-verdict motion for judgment of acquittal.

## VI. CONCLUSION

Based on the foregoing, we reverse the ICA's decision in *State v. Jhun,* No. 16139, slip op. (Ct.App. December 5, 1995) and order the ICA's opinion depublished. We hold that the trial court correctly ruled that Officer Cravalho's cross-examination testimony about Michael's statements in the HPD–252 forms was inadmissible hearsay. Additionally, we hold that the trial court did not err when it denied Jhun's post-verdict motion for judgment of acquittal. After reviewing the record and all of the remaining issues that Jhun has raised on appeal, we hold that Jhun's arguments regarding those remaining issues are without merit. Therefore, we affirm the trial court's conviction of Jhun for assault in the second degree in violation of HRS § 707–711(1)(d).