STATE OF HAWAI`I, Plaintiff-Appellee,
v.
CHAD E. GABRIS, Defendant-Appellant.
No. 28247
Intermediate Court of Appeals of Hawaii.
November 28, 2008.
On the briefs:
Michael Jay Green for Defendant-Appellant.
James M. Anderson Deputy Prosecuting Attorney City and County of Honolulu for Plaintiff-Appellee.

NOT FOR PUBLICATION

SUMMARY DISPOSITION ORDER
FOLEY, Presiding Judge, NAKAMURA, and FUJISE, JJ.
Defendant-Appellant Chad E. Gabris (Gabris) appeals from the Judgment entered on October 23, 2006, by the Circuit Court of the First Circuit (circuit court).[1] Gabris was charged by complaint with three counts of sexual assault arising out of an alleged encounter with A.Q. At the time of the alleged encounter, A.Q. was fifteen years old, Gabris was twenty-three years old, and they were not legally married. The complaint charged Gabris with: 1) first degree sexual assault, in violation of Hawaii Revised Statutes (HRS) § 707-730(1)(c)) (Supp. 2004),[2] for engaging in sexual penetration with A.Q. by inserting his penis into her genital opening (Count 1); third degree sexual assault, in violation of HRS § 707-732(1)(c) (Supp. 2007),[3] for engaging in sexual contact with A.Q. by placing his mouth on her breast (Count 2); and third degree sexual assault, in violation of HRS § 707-732(1)(c), for engaging in sexual contact with A.Q. by placing his hand on her breast.
After a jury trial, Gabris was found guilty as charged of Counts 1 and 2 and not guilty of Count 3. The circuit court sentenced Gabris to terms of imprisonment of twenty years on Count 1 and five years on Count 2, to be served concurrently with each other and with the sentences imposed in Gabris's two other cases.
In his points of error on appeal, Gabris asserts that the circuit court erred by: 1) failing to apply the rule of completeness to permit the defense to question a detective about exculpatory aspects of Gabris's interview statement after the prosecution elicited testimony from the detective that Gabris had told the detective Gabris's date of birth; 2) admitting the testimony of a prosecution witness, which was disclosed to the defense after trial began, that Gabris admitted to having sex with A.Q. and asked the witness to lie to the police; and 3) denying Gabris's motion for a new trial that was based on a juror's alleged failure to follow the court's instruction that jurors were required to accept facts to which the parties have stipulated. For the reasons set forth below, we affirm the circuit court's Judgment.

I.

A.
A.Q. was fifteen years old and in the tenth grade. Her friends, C.W. and J.H., were in the eleventh and tenth grades, respectively, and they all attended the same high school. C.W. knew Gabris, who was twenty-three years old, and introduced him to A.Q. and J.H. During a phone conversation, A.Q. told Gabris that she was fifteen.
On Friday night, the three girls, A.Q., C.W., and J.H., planned to sleep over at C.W.'s house. They told C.W.'s parents that they were going to a movie at a shopping center, but had made arrangements to go to a party with Gabris. Gabris and a male friend picked up the girls at the shopping center in Gabris's truck. Gabris picked up another male friend and then stopped at a store to buy beer and vodka. A.Q. testified that the girls began drinking the vodka in the truck and continued drinking alcohol after arriving at a party outside of Gabris's friend's house. A.Q. drank five beers at the party.
At about 10 p.m., A.Q. had to use the bathroom, and Gabris offered to drive A.Q. to a bathroom. Gabris drove A.Q. in his truck to a nearby park where A.Q. used the restroom then returned to the truck. They talked for a while and the topic of sex came up. A.Q. agreed to have sex with Gabris and they moved to the back seat of the truck.
A.Q. testified that she lay down on the back seat and Gabris pulled her denim skirt above her waist, moved her thong underwear to the side, and placed his penis in her vagina. Gabris also pulled down A.Q.'s strapless top and placed his mouth on her breast. A.Q. stated that Gabris probably placed his hand on her breast, although she could not remember. After the sexual encounter was over, Gabris told A.Q. that he had not used a condom.
Gabris and A.Q. returned to the party and A.Q. told C.W. that she had sex with Gabris. Gabris drove the girls back to the shopping center where A.Q. told J.H. that A.Q. had lost her virginity to Gabris. C.W.'s father picked the girls up from the shopping center. At C.W.'s house, A.Q. told C.W. that Gabris told A.Q. not to tell anyone about the sexual encounter because he would get caught for statutory rape.
On the following Monday or Tuesday, A.Q. told her grandmother and older sister that she had sex with Gabris. Later that week, A.Q.'s stepfather and her mother, who was stationed in Afganistan, were informed, and A.Q.'s stepfather called the police. The police came to A.Q.'s house and recovered the clothing, which had not been washed, that A.Q. had worn on the night of the alleged sexual encounter. Later, A.Q. was interviewed by Detective Gregory McCormick. A.Q.'s clothes, which consisted of a blouse, skirt, and thong underwear, were submitted for DNA analysis. No semen was detected on any of the articles of clothing.

B.
On the first day of trial, during a recess in Gabris's cross examination of A.Q., the Deputy Prosecuting Attorney (DPA) spoke to C.W. C.W informed the DPA that C.W. had been involved in a sexual relationship with Gabris and that Gabris admitted to C.W. that he had sex with A.Q. The DPA immediately disclosed her conversation with C.W. to the circuit court and defense counsel as follows:
Your Honor at the break, I did have an opportunity to speak with C.W. . . . .
[C.W.] has disclosed that after that incident [with A.Q.] had occurred she had an intimate encounter with [Gabris]. She indicates that she had had sex with [Gabris] and that he disclosed to her that he in fact did have sex with [A.Q.]. I did immediately inform the court and counsel with regard to that newly-discovered evidence. The State is seeking to admit that evidence in the interest of aiding the jury in their truth-seeking function.
Defense counsel objected to the admission of C.W.'s proffered testimony on the ground that it had not been disclosed in discovery. The circuit court continued the matter to the following day to give the defense the opportunity to interview C.W. The next day, defense counsel stated that he had interviewed C.W. and that she indicated that Gabris had made several statements to C.W. which "basically amounted to a confession." Defense counsel further reported that C.W. said she had told others about Gabris's confession, gave defense counsel a list of names, and provided defense counsel with information about A.Q.
Defense counsel moved to exclude C.W.'s proffered testimony because of its late disclosure and because of questions regarding its reliability in light of C.W.'s admission that she lied to the police by failing to tell them about Gabris's alleged confession. The DPA argued that C.W.'s proffered testimony was highly relevant and necessary to the truth-seeking function of trial, and that steps could be taken, such as a brief continuance, to mitigate any prejudice from the timing of the disclosure.
The circuit court denied Gabris's motion to exclude the proffered testimony. Defense counsel informed the circuit court that after discussing the matter with Gabris, the defense had decided against requesting a mistrial and instead requested a two-week continuance. Defense counsel stated, "[I]t is my client's intention, and I agree, to not ask for a mistrial at this point. Clearly, we do not want a mistrial. We would ask for a continuance." The circuit court continued the trial for eleven days.
At a hearing prior to the resumption of trial, Gabris renewed his motion to exclude the proffered testimony. The circuit court denied the motion, ruling that the late disclosure was cured by the continuance and the alleged unreliability of the proffered testimony went to its weight and not its admissibility.
After the trial resumed, C.W. was eventually called to testify, which was two weeks after her proffered testimony had been disclosed. C.W. testified that on the day after the incident, she asked Gabris if he had sex with A.Q. and Gabris denied having sex with A.Q. However, days later, Gabris admitted to C.W. that he had in fact had sex with A.Q., but Gabris asked C.W. to tell the police that nothing had happened between Gabris and A.Q. C.W. agreed to lie to the police because she was friends with Gabris and because she resented being blamed for introducing A.Q. to Gabris. Weeks later, C.W.'s friendship with Gabris developed into a sexual relationship, which did not last long.

II.

A.
Gabris asserts that the circuit court erred by prohibiting him from questioning Detective Gregory McCormick about Gabris's full interview statement after the detective testified that he determined Gabris's date of birth by asking him verbally. In particular, Gabris sought to elicit evidence that Gabris had denied any sexual intercourse or contact with A.Q. during his interview with Detective McCormick. Gabris argues that pursuant to the rule of completeness set forth in Hawaii Rules of Evidence (HRE) Rule 106 (1993), Plaintiff-Appellee State of Hawai`i (State) opened the door to the introduction of his complete interview statement by eliciting the detective's testimony regarding Gabris's verbal disclosure of his date of birth on direct examination. We disagree.
Gabris's exculpatory statements to Detective McCormick constitute hearsay when offered by Gabris for their truth to prove his innocence. HRE Rules 801 (Supp. 2007) and 802 (1993); Mathis v. State, 594 S.E.2d 737, 741 (Ga. Ct. App. 2004) ("The defendant is allowed to declare his innocence in court; he is not allowed to avoid this opportunity by pre-trial declarations of innocence."); United States v. Fernandez, 839 F.2d 639, 640 (9th Cir. 1988) (holding that defendant's exculpatory statement to police constituted inadmissible hearsay when offered by the defendant); see State v. Jhun, 83 Hawai`i 472, 477-81, 927 P.2d 1355, 1360-64 (1996) (concluding that a witness's statements to police constituted hearsay). Thus, absent an exception to the rule barring hearsay evidence, Gabris was not entitled to elicit the content of his interview statement with Detective McCormick. HRE Rule 802.
Gabris relies on the rule of completeness set forth in HRS Rule 106 as the basis for the admission of his exculpatory statements to Detective McCormick. HRE Rule 106 provides:
When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the party at that time to introduce any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.
"The rule is based on two considerations. The first is the misleading impression created by taking matters out of context. The second is the inadequacy of repair work when delayed to a point later in trial." Commentary to HRE Rule 106 (quoting Advisory Committee's Note to Fed. R. Evid. 106). Admissibility under HRE Rule 106 should be limited to "contextual matters that explain, qualify, or in some manner shed light on the details" of the portion of the statement introduced by the other party. Addison M. Bowman, Hawaii Rules of Evidence Manual § 106-1 (2008-2009 ed.); see State v. Corella, 79 Hawai`i 255, 263-64, 900 P.2d 1322, 1330-31 (App. 1995).
Gabris's denial of engaging in sexual intercourse or contact with A.Q. in his interview with Detective McCormick was not necessary or relevant to understanding the context of the statement Gabris made regarding his date of birth. We therefore conclude that the circuit court did not err in refusing to permit Gabris to introduce his exculpatory statements to Detective McCormick pursuant to HRE Rule 106.[4]

B.
Gabris contends that the circuit court abused its discretion in admitting C.W.'s testimony that Gabris admitted to C.W. that Gabris had sex with A.Q. and that Gabris asked C.W. to lie to the police. Gabris argues that C.W.'s testimony should have been excluded because it was unreliable, it was disclosed after trial had commenced, and the State failed to exercise diligence and learn of this testimony before trial. We conclude that Gabris's arguments are without merit.
Gabris asserts that C.W.'s testimony was unreliable because, among other things, C.W. initially told the police that nothing occurred between Gabris and A.Q. and C.W. changed her story after her "romantic and intimate sexual relationship with Gabris ended." We conclude that Gabris's attacks on C.W.'s credibility go to the weight and not the admissibility of her testimony. Gabris had the opportunity to impeach C.W.'s testimony at trial by raising all the matters he asserts show that her testimony was unreliable. It was up to the jury to decide whether C.W.'s testimony was credible and what weight it deserved. See State v. Tamura, 63 Haw. 636, 637-38, 633 P.2d 1115, 1117 (1981).
We reject Gabris's claim that the late disclosure of C.W.'s proffered testimony or the State's alleged failure to exercise diligence in discovering that testimony required its exclusion. The State did not violate any discovery rules. There is no dispute that the State disclosed C.W.'s proffered testimony immediately upon learning about it. Hawai`i Rules of Penal Procedure (HRPP) Rule 16(b)(ii) (2006) "requires the State to disclose material information within the prosecutor's possession or control; it does not require the State to discover relevant evidence by a particular deadline. State v. Escobido-Ortiz, 109 Hawai`i 359, 363, 126 P.3d 402, 406 (App. 2005) (internal quotation marks omitted).
During the investigation, C.W. told the police that Gabris had not told her anything. Gabris does not explain why the State was not entitled to rely on C.W.'s prior statement to the police. He does not cite evidence demonstrating that the State should have known that C.W. would change her statement and reveal that Gabris had admitted to having sex with A.Q. Thus, Gabris provides no basis for excluding C.W.'s testimony regarding Gabris's confession on a theory of the State's alleged lack of diligence in discovering it.
Moreover, any unfair prejudice caused by the State's late disclosure of C.W.'s proffered testimony was ameliorated by the circuit court's granting of the mid-trial continuance. Gabris chose to request a continuance rather than a mistrial after C.W.'s proffered testimony was disclosed. The continuance gave Gabris the opportunity to fully interview C.W. and obtain evidence to impeach her testimony. Gabris does not cite any impeachment evidence he was unable to obtain because a longer continuance was not granted.

C.
Gabris contends that the circuit court erred in denying his motion for a new trial. Following the jury's guilty verdicts, the DPA and defense counsel spoke informally with three jurors. According to defense counsel, one of the jurors, Juror #73, indicated that the jury did not consider the DNA test results, which showed no semen on A.Q.'s clothes, because there was no proof that the clothes admitted into evidence (that were tested) were the same clothes that A.Q. wore on the night of the alleged sexual encounter. Gabris moved for a new trial arguing that Juror #73 committed misconduct by disregarding the court's instruction that the jury "must accept, as conclusively proved, any fact to which the parties have stipulated." In connection with the new trial motion, defense counsel, the DPA, and the circuit court all apparently believed that: 1) Gabris and the State had stipulated that A.Q.'s clothing, which had been admitted in evidence, was the clothing she wore at the time of the alleged offenses; and 2) that this stipulation had been presented to the jury. The circuit court denied Gabris's motion for a new trial.
On appeal, Gabris renews his argument that Juror #73 engaged in misconduct, which requires a new trial, by failing to follow the court's instruction regarding the conclusive effect of the parties' stipulation that the clothes admitted in evidence were the clothes A.Q. wore on the night of the alleged offenses. The original briefs filed by Gabris and the State assume that such a stipulation was presented to the jury. However, this court was unable to locate any such stipulation in the record. We therefore directed the parties to submit supplemental briefs addressing whether the jury was presented with a stipulation that the clothes admitted in evidence were the clothes worn by A.Q. at the time of the alleged offenses and if so, where in the record the stipulation can be found. In response, both parties acknowledged that while they intended to enter into such a stipulation, there is nothing in the record indicating that any such stipulation was actually presented to the jury.
In light of this acknowledgment, we conclude that Gabris's argument that the juror engaged in misconduct requiring a new trial must fail. Gabris contends that the juror engaged in misconduct by failing to follow the court's instruction that the jury must give conclusive effect to the parties' factual stipulations. However, Gabris cannot show that a stipulation regarding A.Q.'s clothing was actually presented to the jury. Accordingly, he cannot establish that the juror failed to follow the court's instruction.

III.
The October 23, 2006, Judgment of the circuit court is affirmed.
NOTES
[1] The Honorable Karl K. Sakamoto presided.
[2] At the time relevant to this case, HRS § 707-730(1)(c)) (Supp. 2004) provided:

(1) A person commits the offense of sexual assault in the first degree if:
. . . .
(c) The person knowingly engages in sexual penetration with a person who is at least fourteen years old but less then sixteen years old; provided that:
(i) The person is not less than five years older than the minor; and
(ii) The person is not legally married to the minor.
[3] HRS § 707-732(1)(c) (Supp. 2007) provides:

(1) A person commits the offense of sexual assault in the third degree if:
. . . .
(c) The person knowingly engages in sexual contact with a person who is at least fourteen years old but less than sixteen years old or causes the minor to have sexual contact with the person; provided that:
(i) The person is not less than five years older than the minor; and
(ii) The person is not legally married to the minor[.]
[4] Although not referenced in his point of error, Gabris alludes in his argument section to Detective McCormick's testimony on cross-examination that he took "Gabris at his word. He told me exactly where it happened." Gabris suggests that this testimony also opened the door to the admission of his exculpatory statements under HRE Rule 106. However, this testimony was not adduced by the State but came on cross-examination by Gabris. In addition, the detective immediately clarified that "where it happened" referred to where Gabris had "parked his car." Under these circumstances, the detective's testimony on cross-examination did not warrant the admission of Gabris's exculpatory statements under HRE Rule 106.