263 P.3d 127

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Stephen P. FORMAN, also known as Brazil, Defendant–Appellant.**

**No. 30681.**

Intermediate Court of Appeals of Hawai'i.

Sept. 8, 2011.

---

Walter J. Rodby, on the briefs, for Defendant–Appellant.

Delanie D. Prescott–Tate, Deputy Prosecuting Attorney, City and County of Honolulu, on the briefs, for Plaintiff–Appellee.

FUJISE, Presiding Judge, LEONARD and GINOZA, JJ.

Opinion of the Court by FUJISE, J.

Defendant–Appellant Stephen P. Forman, also known as Brazil (Forman), appeals from the August 11, 2010 judgment of conviction, entered in the Circuit Court of the First Circuit (circuit court).[1] A jury found Forman guilty of one count of Unauthorized Control of Propelled Vehicle (UCPV), in violation of Hawaii Revised Statutes (HRS) § 708–836 (Supp. 2010).

Forman raises two points of error: (1) that the circuit court erred by admitting testimony that the company that owned the moped he was riding when stopped by police had no rental contract authorizing Forman to use the moped and (2) that his trial counsel provided ineffective assistance of counsel. We conclude that the evidence that the company had no contract with Forman is admissible

---

1. The Honorable Dexter D. Del Rosario presided.

under Rule 803(b)(7) of the Hawaii Rules of Evidence (HRE), and that the trial record is insufficient to evaluate whether the assistance given by Forman's trial counsel was ineffective. Accordingly, we affirm Forman's conviction, without prejudice to Forman filing a petition pursuant to Rule 40 of Hawai'i Rules of Penal Procedure (HRPP).

## I. Background

On June 25, 2009, Honolulu Police Department officers Kenneth Creekmur and Nalei Sooto stopped Forman while he was riding a moped on Ala Wai Boulevard. The moped's license decal was partially missing or had been removed, which, according to the officers, was not uncommon for mopeds that had been stolen.

Forman identified himself to the officers and told them that he had just rented the moped but did not have the rental paperwork on him. Officer Sooto determined that the moped was registered to Adventure on 2 Wheels and that the moped was missing, but the company had not reported it as stolen. Forman was arrested and charged by felony information with UCPV.

At trial, Kim Voight, the owner/president of Adventure on 2 Wheels, Inc. (Adventure), verified that the company was the registered owner of a blue moped with license number N60317 and that the company referred to it as Moped No. 26.

According to Voight, Adventure's procedure for renting a moped required employees to ask the customer for a driver's license and verify that the customer is eighteen. Customers must provide a credit card number for a deposit in case the moped becomes damaged, but can pay rental fees by cash or credit card. A company employee informs the customer of the rental fees and shows the customer a contract. Each contract has been pre-printed with a number. The employee writes the number of the moped being rented on the contract, records any pre-existing damage and the mileage, and the customer signs it. According to Voight, no one would be allowed to use a moped without signing a contract.

Voight stated that the contracts are generated every time the company rents a moped and the records are kept in the regular course of business. The contracts are "locked up" after customers sign them and "dropped in a safe" once the mopeds are returned. After Forman's arrest, Voight attempted to locate an agreement "for a Moped No. 26 on or about June 25th, 2009," but could not find one. Voight reviewed the contracts "from that time period," and no contracts were missing from the sequence.

The prosecutor asked Voight, "So based on the absence of these contracts, can you tell if anyone had permission to operate the blue moped with license N60317, which for your—according to your company is Moped No. 26?" Forman objected: "Calls for speculation, foundation, hearsay, lack of personal knowledge, competency." The circuit court overruled the objection. Voight answered that "[n]o one has permission. Not even my employees can ride the mopeds."

Forman was the sole witness for the defense. He claimed that he was operating the moped under apparent authorization given to him by Alfredo Bandalan (Bandalan), a company employee. According to Forman, on June 21, 2009, he went to the hostel where Adventure is located and Adam Weiss, a friend of Forman's girlfriend, introduced him to Bandalan. Forman testified that Bandalan rented him the moped for $40 a day, and he returned to the hostel four or five times to pay Bandalan, each time in cash. Forman also said that Bandalan gave him some paperwork, which he discarded without reading.

Voight verified that in June 2009 Bandalan was an employee of the company. She said Bandalan worked for the company for about two months before she fired him because "he kept bad paperwork" and was late. Prior to terminating Bandalan, Voight warned him "that he needed to keep his paperwork better" but his performance "[g]ot worse."

Bandalan did not testify. The State named him on its witness list filed January 5, 2010. A week later, on the first day of trial, the court was informed that the State would not call Bandalan to testify; he was not in Hawai'i because he had been extradited to

Kentucky a month earlier to stand trial on a rape charge. In response to Forman's concerns that Bandalan's absence might raise a "confrontation clause problem," [2] the parties stipulated that they would make no reference to what Bandalan said to police.

On January 15, 2010, a jury found Forman guilty on one count of UCPV.

On February 1, 2010, Forman's counsel (Counsel) filed a motion to withdraw, based on Forman's belief that Counsel was providing ineffective assistance. At the hearing on the motion, Forman said that before trial, he had located Bandalan and Bandalan agreed to testify on his behalf, that he told Counsel to subpoena Bandalan, but that Counsel refused, because "that's against my strategy." The circuit court asked Counsel for a response, to which Counsel replied, "I think he has arguments to be made. I think they should be made in a formal setting. I don't think this would be the appropriate setting for that." The circuit court granted the motion to withdraw as counsel.

On March 9, 2010, Forman, represented by newly-appointed counsel Walter Rodby, filed a motion for new trial on the grounds that Counsel provided ineffective assistance where he "failed to investigate, interview and subpoena a critical defense witness, Alfredo Bandalan, which resulted in the substantial impairment of a meritorious defense," and where he had a conflict of interest because the Office of the Public Defender (OPD) had simultaneously represented Bandalan and Forman. Forman acknowledged that the motion was made after HRPP Rule 33's ten-day deadline but argued the deadline should not be rigidly applied out of fairness. The State argued that the deadline must be strictly complied with, and Forman's motion should be denied because it was filed 53 days after the jury verdict, or 43 days late.

At the hearing on the motion for new trial, Forman introduced:

- An offer of proof that Adam Weiss "would also be able to corroborate that Mr. Forman was making rental payments on that moped to [ ] Bandalan" and that Weiss never talked to a public defender;

- An audio recording of a conversation between Rodby and Bandalan in which Bandalan said that he "rented the moped without documentation, and in fear of losing [his] job, [he] made false statements to the police" and that he never talked to an attorney representing "Brazil";

- Forman's testimony that he found Bandalan and that Bandalan agreed to make a statement to the effect that Forman was not aware that the moped was stolen; that he asked Counsel to talk to Bandalan but Counsel said "oh, it's against my strategy," and to his knowledge Counsel never talked to Bandalan;

- A note from Forman to Counsel, made during trial, which read, "You need to let the jury know I requested Mr. Bandalan & Adam to be subpoenaed but it went against your strategy."

Forman also orally moved to dismiss the charges because he received ineffective assistance of counsel. The circuit court denied the motion for new trial as untimely and denied the motion to dismiss.

After the hearing, the defense filed a sworn declaration from Bandalan, in which he asserted that he rented the moped to Forman, Forman paid Bandalan but Bandalan used the money for his own benefit, and that Bandalan did not tell Forman that he was using the rental fees for his own benefit. He also attested that Forman's attorney did not contact him about appearing in court.

The circuit court sentenced Forman to imprisonment for five years, subject to a mandatory minimum of one year and eight months as a repeat offender.

## II. Discussion

### A. Admissibility of the Absence of a Business Record

■ Forman's first point of error alleges that the circuit court erred by admitting

2. The Sixth Amendment of the federal Constitution provides that "the accused shall enjoy the right ... to be confronted with the witnesses against him[.]" U.S. Const. Amend. VI. *See also* Haw. Const. art. 1, § 14.

Voight's testimony that there was no rental contract for Moped No. 26. Although Forman gave a scattershot objection at trial that the testimony should be excluded based on "speculation, foundation, hearsay and lack of personal knowledge, and competency," on appeal he only argues that "the source of the information and other circumstantial evidence indicate[s] a lack of trustworthiness." We conclude that the circuit court did not err in admitting Voight's testimony under HRE Rule 803(b)(7).

■ "Where admissibility of evidence is determined by application of the hearsay rule, there can only be one correct result, and the appropriate standard for appellate review is the right/wrong standard." *State v. Fitzwater*, 122 Hawai'i 354, 362, 227 P.3d 520, 528 (2010) (quoting *State v. Machado*, 109 Hawai'i 445, 450, 127 P.3d 941, 946 (2006) (internal quotation marks omitted)). However, whether proposed evidence shows a "lack of trustworthiness" is reviewed for abuse of discretion. *Id.* (citing *State v. Jhun*, 83 Hawai'i 472, 477 & n. 4, 927 P.2d 1355, 1360 & n. 4 (1996)).

HRE Rule 803(b)(7) permits the admission of:

> [e]vidence that a matter is not included in the memoranda, reports, records, or data compilations, in any form, kept in accordance with the provisions of paragraph (6), to prove the nonoccurrence or nonexistence of the matter, if the matter was of a kind of which a memorandum, report, record, or data compilation was regularly made and preserved, unless the sources of information or other circumstances indicate lack of trustworthiness.

Paragraph (6) provides for the admission of "records of regularly conducted activity," which may include:

> [a] memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made in the course of a regularly conducted activity, at or near the time of the acts, events, conditions, opinions, or diagnoses, as shown by the testimony of the custodian or other qualified witness, or by certification that complies with rule 902(11) or a statute permitting certification, unless the sources

of information or other circumstances indicate lack of trustworthiness.

HRE 803(b)(6).

The absence of an entry in a business record is technically not hearsay because it "is not, in and of itself, a 'statement … offered in evidence to prove the truth of the matter asserted [ ].'" HRE Rule 803(b)(6) and (7) cmt. Rule 803(b)(7) nevertheless classifies the absent business record as a hearsay exception. *Id. Accord* Fed.R.Evid. 803(7) advisory committee's note; *United States v. Lee*, 589 F.2d 980, 987 (9th Cir. 1979).

Although the Hawai'i Supreme Court has discussed the foundational sufficiency of business records under HRE 803(b)(6), *see, e.g., Fitzwater*, no prior Hawai'i appellate case has examined the foundation needed to introduce evidence that a business record did not exist under HRE 803(b)(7). Because HRE Rule 803(b)(6) and (7) are based on Rules 803(6) and (7) of the Federal Rules of Evidence (FRE), we look to cases applying the federal rule for guidance. HRE 803(b)(6) and (7) cmt.; *see State v. Fukagawa*, 100 Hawai'i 498, 511 n. 9, 60 P.3d 899, 912 n. 9 (2002) (looking to authorities construing FRE Rules 702 and 703 "because the HRE are patterned after those rules").

Some federal cases suggest that the foundational prerequisites for admitting evidence under FRE Rule 803(7) are the same as those for admitting business records under Rule 803(6). *See United States v. Regner*, 677 F.2d 754, 762 (9th Cir.1982) ("since [FRE] 803(7) is based on 803(6), such testimony [regarding the nature of recordkeeping] is required before evidence may be received thereunder"); *In re Apex Express Corp.*, 190 F.3d 624, 635 (4th Cir.1999); *Morris v. B.C. Olympiakos, SFP*, 721 F.Supp.2d 546, 551 (S.D.Tex.2010); *In re Enron Creditors Recovery Corp.*, 376 B.R. 442, 454 (Bankr.S.D.N.Y.2007).

Other federal cases suggest, however, that the foundation for a business record is inadequate for admitting absence of the same record. The First Circuit Court of Appeals, for example, concluded that the slight variation between the language in FRE 803(6) and

803(7) "indicates that even if a business record is deemed sufficiently trustworthy to be admissible for its contents under Rule 803(6), other circumstances might render omissions in that record untrustworthy to show that the events omitted did not occur." *United States v. Muñoz–Franco*, 487 F.3d 25, 39 (1st Cir.2007). The Court of Federal Claims emphasized that "when a litigant offers the *absence* of a business record as proof that an event did *not* take place, under Rule 803(7), the trustworthiness requirement assumes heightened importance...." *Exxon Corp. v. United States*, 45 Fed.Cl. 581, 690 (1999), *aff'd in part, rev'd in part on other grounds by Exxon Mobil Corp. v. United States*, 244 F.3d 1341 (Fed.Cir.2001).

The federal courts have cited three concerns when evaluating the trustworthiness of absent records, including both public and business records. First, where a qualifying witness[3] testifies to the purported absence of a record, the trustworthiness of this testimony depends on "the thoroughness or diligence of the records search." *United States v. Robinson*, 544 F.2d 110, 115 (2nd Cir. 1976). Second, there must be a showing that the record searched was itself sufficiently complete. *Exxon Corp.*, 45 Fed.Cl. at 691. Lastly, if the record is being used to prove that an event did not occur, the event must be of the particular type that would have been mentioned in the record if it had indeed occurred. *See United States v. De Georgia*, 420 F.2d 889, 893 (9th Cir.1969).

Unlike FRE Rule 803(10) and HRE Rule 803(b)(10), which concern the absence of entries in a public record, FRE Rule 803(7) and HRE Rule 803(b)(7) do not require certification or testimony that "diligent search failed to disclose the record, report, statement, or data compilation." However, this is implied. *See* 30B Michael H. Graham, *Federal Practice and Procedure* § 7048, at 590 (Interim ed. 2006). "It hardly requires extended discussion to demonstrate that a casual or partial search cannot justify the conclusion that there was no record." *Robinson*, 544 F.2d at 115.

Courts have rejected the use of FRE Rule 803(7) to prove the nonoccurrence of an event where the records, which should have documented the event, although completely searched, were partial or incomplete. For example, in *Exxon Corp.*, the Court of Federal Claims rejected Exxon's contention that, pursuant to FRE Rule 803(7), it was entitled to a "negative evidence" inference that an event did not occur because contract files stipulated into the record did not mention an event in dispute, because the court had "no assurance whatever that [the contract files] are *complete*" and, to the contrary, found "chronological gaps" and "other indicia of incompleteness." 45 Fed.Cl. at 691. Although the parties stipulated to admit the files, they did not stipulate "as to the manner of [their] origin, purpose, or completeness." *Id.* The court reasoned that lack of a relevant document within the files could mean that the document was never executed or that it "existed at one time, but was subsequently lost, destroyed, misfiled, or otherwise excluded from the contract file." *Id.* The Court of Appeals for Veterans Claims[4] noted that before making inferences from "negative evidence," the records must "appear to be complete, at least in relevant part." *Kahana v. Shinseki*, 24 Vet.App. 428, 440 (2011) (Lance, J., concurring). If records are complete, the claims review board must also find that the "injury, disease, or related symptoms would ordinarily have been recorded had they occurred." *Id.* Without the assurance that records are complete, the court said, "then silence in the [medical records] is merely the absence of evidence and not substantive negative evidence." *Id.*

---

**3.** The Ninth Circuit noted that although FRE Rule 803(7) does not specifically require testimony of a custodian or another qualified witness, it assumed, without deciding, that their testimony would be necessary to overcome a challenge to the trustworthiness of the records. *United States v. Rich*, 580 F.2d 929, 938 (9th Cir.1978).

**4.** Although they are not bound by the Federal Rules of Evidence, FRE Rule 1101(a), the veterans' claims courts frequently cite FRE Rule 803(7) to admit "negative evidence" based on omissions from medical records, e.g., a finding that a disability does not exist because a medical record, as a particular type of business record, does not mention signs or symptoms of that disability.

A showing that the unrecorded event would ordinarily have been recorded in the course of business had it occurred finds its corollary in the requirement in FRE Rule 803(6) that a record is "kept in the course of a regularly conducted business activity." *See De Georgia,* 420 F.2d at 891–92 (citing 5 Wigmore, *Evidence* §§ 1531, 1556 at 392, 410 (3d ed. 1940)). "If records are routinely kept (or entries are routinely made), they are likely to be *complete and comprehensive,* so nonmention (or nonexistence of a record or entry) is a good indication that act, event, or condition did not occur or exist." *Exxon,* 45 Fed.Cl. at 690–91 (quoting Christopher B. Mueller & Laird C. Kirkpatrick, *Evidence* § 8.51, at 995 (1995)). "Demonstrating that the records were kept in such a way that the matter would have been recorded had it occurred is crucial to any such showing." 5–803 *Weinstein's Federal Evidence* § 803.09 (2002). "[I]f a business record *designed to note every transaction of a particular kind* contains no notation of such a transaction between specified dates, no such transaction occurred between those dates." *De Georgia,* 420 F.2d at 893 (emphasis added) (applying the predecessor statute to FRE Rule 803(7) to admit testimony regarding lack of rental-car contract as proof of interstate transportation of stolen vehicles). However, if the records do not record *every* transaction of a particular kind, it casts doubt on the regularity of such a record and thus whether the records can be relied upon as being complete. *See Fury Imports, Inc. v. Shakespeare Co.,* 554 F.2d 1376, 1381 (5th Cir.1977) (reversing trial court's use of FRE Rule 803(7) to grant a judgment notwithstanding the verdict in contract dispute where testimony established some transactions were not written down).

Here, Forman does not complain that Voight's search of records was not diligent, although her testimony is imprecise as to what records she searched before concluding that there was no rental contract for the moped Forman was caught riding. It is unclear whether Voight searched all rental contracts or the contracts made prior to June 25 but still in effect. Forman's argument on appeal does not rest on the diligence of Voight's search through the company files.

Instead, Forman implies that the company's records were too incomplete to be considered trustworthy because Bandalan did not maintain the documents on every rental. However, there was no evidence produced at trial that would support the inference that Bandalan caused the company's records to be incomplete. Forman's cross-examination of Voight did not adduce evidence that Bandalan's mishandling of business records included a failure to make required records. Rather, her testimony that Bandalan "kept bad paperwork" is an ambiguous complaint that could encompass a variety of errors, such as writing illegibly, erroneously transcribing customers' information, or misfiling papers. There is no indication that Bandalan's poor work affected the completeness of the company's records.

To the contrary, the evidence supports a conclusion that Adventure on 2 Wheels's records were complete. Voight testified that the records were printed with sequential numbers, the contracts dated near the time that Forman was apprehended were in sequential order and all accounted for, but there was no contract pertaining to Moped No. 26. Moreover, Voight testified that her employees write a contract for every rental and that the mopeds could not be used without a contract.

The vague testimony that Bandalan "kept bad paperwork," without more, does not warrant a conclusion that the company's records as a whole were untrustworthy. "The mere fact that errors or deviations have occurred from time to time does not destroy the inference of underlying trustworthiness which a judge may choose to draw from proof of a general practice." *United States v. McGill,* 953 F.2d 10, 15 (1st Cir.1992) (citing *United States v. Patterson,* 644 F.2d 890, 901 (1st Cir.1981) ("The fact that a regular practice is occasionally broken is not enough to avoid application of the business records rule; otherwise, the rule would be swallowed up by an exception for less-than-perfect business practices.")). Courts have admitted evidence under the business records rule despite the fact that some records were missing or unavailable, *United States v. Hathaway,* 798 F.2d 902, 907 (6th Cir.1986),

and even manipulated or falsified. *United States v. Hutson,* 821 F.2d 1015, 1020 (5th Cir.1987).

■ "Generally, objections that an exhibit may contain inaccuracies, ambiguities, or omissions go to the weight and not the admissibility of the evidence." *United States v. Keplinger,* 776 F.2d 678, 694 (7th Cir.1985). *See also Hathaway,* 798 F.2d at 907 ("in the absence of specific and credible evidence of untrustworthiness, the proper approach is to admit the evidence and permit the jury to determine the weight to be given the records"); *Resolution Trust Corp. v. Gladstone,* 895 F.Supp. 356, 373 (D.Mass.1995) (noting that although proponent of business record's admission should have handled files more carefully, any inconsistencies bear on the weight to be given); *Wallace by Wallace v. Target Stores, Inc.,* 701 P.2d 1272, 1273 (Colo.App.1985) ("Any incompleteness of the business entries, the business records, or the summaries or compilations thereof, goes to the weight of the evidence, and not to its admissibility."). *Accord State v. Bush,* 58 Haw. 340, 344, 569 P.2d 349, 351 (1977) ("a jury is asked to weigh the chances that the [circumstantial] evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inference").

The circuit court's determination of whether there is a lack of trustworthiness of evidence offered under HRE Rule 803 is reviewed for abuse of discretion. *Fitzwater,* 122 Hawai'i at 363, 227 P.3d at 529 (citing *Jhun,* 83 Hawai'i at 478 & n. 4, 927 P.2d at 1361 & n. 4). Here, the circuit court apparently determined that Adventure's records bore the indicia of trustworthiness. Forman's sole basis for maintaining the records were not trustworthy was Bandalan's "bad paperwork." However, this ambiguous testimony is insufficient to establish the circuit court's conclusion to the contrary "clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." *State v. Crisostomo,* 94 Hawai'i 282, 287, 12 P.3d 873, 878 (2000). Accordingly, we conclude the circuit court did not abuse its discretion in determining that Voight's testimony regarding the lack of a rental contract was admissible under HRE Rule 803(b)(7).

## B. Ineffective Assistance of Counsel

■ Forman's second point of error on appeal reiterated the ineffective assistance of counsel claim made in his untimely motion for new trial. Because Forman did not move for a new trial before HRPP Rule 33's deadline, the circuit court lacked jurisdiction to hear his ineffective assistance claim. *State v. Reed,* 77 Hawai'i 72, 83, 881 P.2d 1218, 1229 (1994), *overruled on other grounds by State v. Balanza,* 93 Hawai'i 279, 1 P.3d 281 (2000). Where the circuit court lacks jurisdiction to hear an ineffective assistance claim, the appellate courts consider it as raised for the first time on appeal. *Id.* at 83, 881 P.3d at 1229. Such a claim may be raised for the first time on appeal. *Id.* (citing *State v. Silva,* 75 Haw. 419, 864 P.2d 583 (1993)).

■ In analyzing an ineffective assistance of counsel claim, the appellate courts consider whether counsel acted "within the range of competence demanded of attorneys in criminal cases." *State v. Wakisaka,* 102 Hawai'i 504, 513–14, 78 P.3d 317, 326–27 (2003) (internal quotation marks and citation omitted).

> "The defendant has the burden of establishing ineffective assistance of counsel and must meet the following two-part test: 1) that there were specific errors or omissions reflecting counsel's lack of skill, judgment, or diligence; and 2) that such errors or omissions resulted in either the withdrawal or substantial impairment of a potentially meritorious defense." [ ] *State v. Aplaca,* 74 Haw. 54, 66–67, 837 P.2d 1298, 1305 (1992). To satisfy this second prong, the defendant needs to show a possible impairment, rather than a probable impairment, of a potentially meritorious defense. *State v. Christian,* 88 Hawai'i 407, 419, 967 P.2d 239, 251 (1998). A defendant need not prove actual prejudice. *Id.*

*Id.* at 514, 78 P.3d at 327. Forman points to Counsel's failure to obtain Bandalan's testimony for trial as a specific omission demonstrating his ineffectiveness. Where an ineffective assistance claim is based on counsel's failure to obtain a witness, the defendant

must produce affidavits or sworn statements describing the testimony of the proffered witnesses. *State v. Richie*, 88 Hawai'i 19, 39, 960 P.2d 1227, 1247 (1998). Here, Forman produced such a declaration from Bandalan.

Forman's trial communication with Counsel suggests that the failure to call Bandalan was a strategic decision. Counsel stipulated at trial to exclude any statements made by Bandalan; Bandalan's initial statement to police led to Forman's arrest. Generally, the appellate courts will not subject alleged errors which have "an obvious tactical basis for *benefitting* the defendant's case" to further scrutiny. *Briones v. State*, 74 Haw. 442, 462–63, 848 P.2d 966, 976 (1993). Moreover, "[t]he decision whether to call witnesses in a criminal trial is normally a matter within the judgment of counsel and, accordingly, will rarely be second-guessed by judicial hindsight." *State v. Onishi*, 64 Haw. 62, 63, 636 P.2d 742, 744 (1981). On the other hand, the court should not defer to counsel's judgment in deciding not to call a potential witness to testify where there was not "a foundational factual predicate" from which counsel could make an informed decision about whether to call the witness. *Aplaca*, 74 Haw. at 71, 837 P.2d at 1307.

In *Aplaca*, the Hawai'i Supreme Court held, "the decision not to conduct a pretrial investigation of prospective defense witnesses cannot be classified as a tactical decision or trial strategy." *Id.* Aplaca's trial counsel conceded that he did not attempt to interview witnesses who would have bolstered Aplaca's credibility and oppugned the complaining witness's credibility, or investigate leads that were mentioned in subpoenaed documents. *Id.* at 70, 837 P.2d at 1306–07. The court said,

> If counsel does not adequately investigate the underlying facts of a case, including the availability of prospective defense witnesses, counsel's performance cannot fall within the "wide range of reasonable professional assistance." ... It is only after an adequate inquiry has been made that counsel can make a reasonable decision to call or not to call particular witnesses for tactical reasons.

*Id.* (quoting *State v. Templin*, 805 P.2d 182, 188 (Utah 1990)). Accordingly, the court remanded the case for a new trial on the basis of ineffective assistance of counsel. *Id.* at 73, 837 P.2d at 1308.

If not for Bandalan's assertion that Forman's public defender did not contact him before trial, we would conclude that the failure to call Bandalan resulted from a tactical decision and deny Forman's ineffective assistance claim accordingly. However, like the corroborating witnesses who were never called in *Aplaca*, Bandalan attested that Counsel never contacted him. *See id.* at 68, 837 P.2d at 1306. This suggests that Counsel did not diligently investigate Forman's apparent-authority defense. In contrast to Aplaca's trial counsel, however, Counsel made no statement regarding what attempts he made, if any, to interview Bandalan.

Defense counsel's failure to call a corroborating witness may result in the substantial impairment of a potentially meritorious defense. *Silva*, 75 Haw. at 443, 864 P.2d at 594. However, where the Supreme Court was unable to determine from the record whether the defense counsel attempted to subpoena the witness, the court would not conclude from the fact that the witness was actually not subpoenaed that there was an omission reflecting counsel's lack of skill, judgment, and diligence rising to the level of ineffective assistance of counsel. *Id.* at 443–44, 864 P.2d at 594–95. The court implied that the extent of defense counsel's attempts to obtain a witness's presence by subpoena might refute a showing of ineffective assistance. *Id.*

The court acknowledged that "not every trial record is sufficiently developed to determine whether there has been ineffective assistance of counsel[.]" *Id.* at 439, 864 P.2d at 592; *see also Reed*, 77 Hawai'i at 83, 881 P.2d at 1229.

> [W]here the record on appeal is insufficient to demonstrate ineffective assistance of counsel, but where: (1) the defendant alleges facts that if proven would entitle him or her to relief, and (2) the claim is not patently frivolous and without trace of support in the record,[ ] the appellate court may affirm defendant's conviction without

prejudice to a subsequent [HRPP] Rule 40 petition on the ineffective assistance of counsel claim.

*Silva,* 75 Haw. at 439, 864 P.2d at 592–93. Such is the case here.

Forman raises a prima facie claim of ineffective assistance. Because Forman was the sole witness in his defense, the jury might have found his testimony self-serving and not credible. Bandalan's testimony, if believed, would have corroborated Forman's testimony and supported his defense that he had the apparent authorization to use the moped. Thus, the failure to obtain Bandalan's testimony impaired this potentially meritorious defense. Bandalan's declaration that Counsel did not talk to him before trial, however, is insufficient evidence from which to conclude that Counsel was not diligent in investigating Forman's apparent-authorization defense. Thus, we affirm defendant's conviction without prejudice to a subsequent petition brought under HRPP Rule 40. We note that where ineffectiveness of counsel is the basis for a Rule 40 petition, the defendant must serve written notice of the hearing on counsel whose assistance has been challenged as ineffective and the counsel shall be given an opportunity to be heard. *See* HRPP Rule 40(f).

■ Forman's second ineffective assistance claim alleges that a conflict of interest was created when two attorneys from the OPD simultaneously represented him and Bandalan—Counsel represented Forman at his January 2010 trial and Alan Komogome represented Bandalan at an extradition hearing in November 2009—and that Forman did not waive such a conflict.

■ In considering whether a conflict of interest constitutes ineffective assistance of counsel, the appellate court considers first "whether a relationship existed between the attorney and his/her clients giving rise to a conflict." *Richie,* 88 Hawai'i at 44, 960 P.2d at 1252. The Hawai'i Rules of Professional Conduct (HRPC) indicate that a conflict may arise where a lawyer represents two clients whose interests are "directly adverse" or whose representation may be "materially limited" by the attorney's responsibilities to the

other. HRPC Rule 1.7(a) and (b). Forman has shown neither. *State v. Mark,* 123 Hawai'i 205, 245–46, 231 P.3d 478, 518–19 (2010). Therefore, our analysis returns to whether an actual conflict existed, and we will assume, as Forman has, that the OPD is a single firm.

Under HRPC Rule 1.7,

(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:

(1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and

(2) each client consents after consultation.

(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

(1) the lawyer reasonably believes the representation will not be adversely affected; and

(2) the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

HRPC Rule 1.7. The Hawai'i Supreme Court has said that "paragraph (a) encompasses the situation in which defense counsel represents, in another case, a person who is a prosecution witness in the current case," because "[w]hen the attorney cross-examines that client on the witness stand, he is clearly acting 'directly adverse' to that client." *Richie,* 88 Hawai'i at 44, 960 P.2d at 1252. However, the court has also noted that "although a 'relationship giving rise to a conflict' may exist at a certain point in time, *i.e.,* prior to trial, if that relationship ceases prior to the development of an actual conflict, then counsel is not necessarily ineffective, depending on the 'particular circumstances of the [ ] case[.]'" *Mark,* 123 Hawai'i at 239–40, 231

P.3d at 512–13 (quoting *Richie*, 88 Hawai'i at 44, 960 P.2d at 1252).

In *Richie*, the alleged conflict of interest arose when one of Richie's defense attorneys represented Monica Alves, "an obvious potential witness" and one-time co-defendant, in a separate civil case. 88 Hawai'i at 44, 960 P.2d at 1252. The Supreme Court chastised counsel's decision to represent both Richie and Alves as "at the very least, unwise" but noted that the co-representation did not support an ineffectiveness complaint because by the time Richie went to trial, the State had dismissed charges against Alves, so she was no longer a co-defendant. *Id.* Furthermore, Alves was never called as a witness. *Id.* "Although she was clearly a *potential* witness, she was not an *actual* witness." *Id.* As the court later explained, "under the particular circumstances of that case, no conflict materialized." *Mark*, 123 Hawai'i at 240, 231 P.3d at 513.

Analogously here, the conflict that would be created if the public defender cross-examined Bandalan did not materialize because Bandalan did not testify. When Bandalan was represented by a public defender at his extradition hearing, Bandalan was only a potential witness in Forman's trial. It was not until January 5, 2010, a week before trial and after Bandalan had been extradited, that the State named Bandalan on its witness list. Therefore, there was no overlap in the time in which OPD represented Forman and Bandalan was an actual witness for the State.

■■■ Forman's appeal asserts that Bandalan should have been the defense's witness, not the prosecution's. Although it is clear, under Hawai'i law, that a conflict is inherent in "joint representation of two or more co-defendants and concurrent representation of both the defendant and ... a prosecution witness," *Richie*, 88 Hawai'i at 44, 960 P.2d at 1252, we can find no authority, nor does Forman cite any, that a conflict is presumed where a defense attorney represents, in an unrelated criminal matter, a witness on his or her client's behalf. *See State v. Wabashaw*, 274 Neb. 394, 740 N.W.2d 583, 597 (2007) (concern that defense counsel is unable "to conduct a thorough cross-examination" due to loyalty owed to witness-client is not present on direct examination); *see also* Gregory G. Sarno, Annotation, *Circumstances giving rise to prejudicial conflict of interests between criminal defendant and defense counsel—state cases,* 18 A.L.R.4th 360 (1982) (collecting cases with divergent views on whether "[r]epresentation by same or affiliated attorneys of noncodefendant defense witnesses at separate proceedings" constitutes a conflict of interest).

■■■ OPD represented Bandalan and Forman simultaneously for a brief period, during Bandalan's extradition proceedings. Forman failed to show that at the time of the concurrent representation that Forman's interests conflicted with Bandalan's interests, whatever they were during the extradition. The defendant has the burden of demonstrating that his or her attorney actively represented conflicting interests. *See Fragiao v. State*, 95 Hawai'i 9, 17, 18 P.3d 871, 879 (2001). Forman failed to demonstrate that a conflict of interest existed. Consequently, we do not consider whether the OPD's relationships with Bandalan and Forman caused Counsel to provide ineffective assistance. *See Mark*, 123 Hawai'i at 243, 231 P.3d at 516.

The burden of showing ineffective assistance of counsel rests on Forman. *Briones*, 74 Haw. at 460, 848 P.2d at 975. Forman failed to demonstrate that a conflict of interest existed because of the OPD's representation. Consequently, we do not consider whether such a relationship constituted ineffective assistance of counsel. *See Mark*, 123 Hawai'i at 243, 231 P.3d at 516.

### III. Conclusion

We affirm defendant's conviction without prejudice to a motion for relief under HRPP Rule 40.