Electronically Filed
Intermediate Court of Appeals
CAAP-18-0000493
28-JUN-2019
01:45 PM

NO. CAAP-18-0000493

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


CITIBANK, NA AS TRUSTEE FOR WAMU SERIES 2007-HE2 TRUST,
Plaintiff-Appellee,
v.
WILLIAM GASPAR; JOYAL GASPAR,
Defendants-Appellants,
and
HAWAIIAN OCEAN VIEW ESTATES ROAD MAINTENANCE CORPORATION,
Defendant-Appellee,
and
JOHN DOES 1-50; JANE DOES 1-50; DOE PARTNERSHIPS 1-50;
DOE CORPORATIONS 1-50; DOE ENTITIES 1-50; and
DOE GOVERNMENTAL UNITS 1-50, Defendants


APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CIVIL NO. 17-1-0137)


SUMMARY DISPOSITION ORDER
(By: Ginoza, Chief Judge, Chan and Hiraoka, JJ.)

Defendants-Appellants William Gaspar and Joyal Gaspar
(collectively, the Gaspars) appeal from the Judgment (Foreclosure
Judgment) entered in favor of Plaintiff-Appellee[1] Citibank, NA as
Trustee for WAMU Series 2007-HE2 Trust (Citibank) pursuant to the
"Findings of Fact; Conclusions of Law; Order Granting Plaintiff's
Motion for Summary Judgment as Against All Defendants and for
Interlocutory Decree of Foreclosure" (Foreclosure Decree), both
filed on May 18, 2018, in the Circuit Court of the Third Circuit

_____

[1] Hawaiian Ocean View Estates Road Maintenance Corporation is also named
as a Defendant-Appellee, but did not participate in the appeal.

(circuit court).[2]

On appeal, the Gaspars contend that the circuit court erred by granting Citibank's December 15, 2017 "Motion for Summary Judgment as Against All Defendants and for Interlocutory Decree of Foreclosure" (MSJ) because genuine issues of material fact remained as to whether Citibank had standing to foreclose on the subject mortgage. Specifically, the Gaspars appear to contend that there was no evidence that Citibank was in possession of the subject "Fixed/Adjustable Rate Balloon Note" (Note) at the time it filed its Complaint and that any purported evidence was inadmissible.[3]

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, as well as the relevant case law, we resolve the Gaspars' appeal as follows.

> The appellate court reviews "the circuit court's grant or denial of summary judgment *de novo*." Accordingly, "[o]n appeal, an order of summary judgment is reviewed under the same standard applied by the circuit courts. Summary judgment is proper where the moving party demonstrates that there are no genuine issues of material fact and it is entitled to a judgment as a matter of law. In other words, summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law."

Kawashima v. State, 140 Hawai'i 139, 148, 398 P.3d 728, 737 (2017) (block quote format altered) (internal citations omitted). In reviewing a circuit court's grant or denial of a motion for summary judgment, the appellate court "must view all of the

---

[2] The Honorable Henry T. Nakamoto presided.

[3] In its Answering Brief, Citibank argues that the Gaspars' Opening Brief should be stricken for failure to comply with Hawai'i Rules of Appellate Procedure (HRAP) Rule 28 (2016). While it is true that HRAP Rule 28(b) requires that an opening brief on appeal contain certain elements, we acknowledge that Hawai'i's appellate courts "consistently adhere[] to the policy of affording [pro se] litigants the opportunity to have their cases heard on the merits, where possible[.]" Hous. Fin. & Dev. Corp. v. Ferguson, 91 Hawai'i 81, 85-86, 979 P.2d 1107, 1111-12 (1999) (citation omitted). This is traditionally true when the HRAP Rule 28(b) violations are chiefly a matter of form and the underlying legal arguments are still ascertainable, as they are in this case. See O'Connor v. Diocese of Honolulu, 77 Hawai'i 383, 386, 885 P.2d 361, 364 (1994) (citations omitted). Accordingly, we address the Gaspars' points of error on the merits.

2

evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion." Crichfield v. Grand Wailea Co., 93 Hawai'i 477, 483, 6 P.3d 349, 355 (2000) (internal quotation marks, brackets, and citation omitted).

The Gaspars first contend that the undated indorsement in blank associated with the Note and attached to the Complaint presents a genuine issue of material fact as to whether Citibank had possession of the Note at the time the Complaint was filed.

"A foreclosing plaintiff must [] prove its entitlement to enforce the note and mortgage." Bank of America, N.A. v. Reyes-Toledo, 139 Hawai'i 361, 367, 390 P.3d 1248, 1254 (2017) (citations omitted). "A foreclosing plaintiff's burden to prove entitlement to enforce the note overlaps with the requirements of standing in foreclosure actions as '[s]tanding is concerned with whether the parties have the right to bring suit.'" Id. (quoting Mottl v. Miyahira, 95 Hawai'i 381, 388, 23 P.3d 716, 723 (2001)). "As standing relates to the invocation of the court's jurisdiction, it is not surprising that standing must be present at the commencement of the case." Id. at 368, 390 P.3d at 1255 (citing Sierra Club v. Haw. Tourism Auth., 100 Hawai'i 242, 257, 59 P.3d 877, 892 (2002)). Thus, a foreclosing plaintiff must establish entitlement to enforce the note and standing to foreclose on the mortgaged property at the commencement of the suit. See id.

> A blank indorsement occurs when an indorsement is made by the holder of an instrument and is not a special indorsement; in other words, a blank indorsement is not payable to an identified person. When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer or possession alone until specially indorsed.

Id. at 370, 390 P.3d at 1257 (internal citations omitted) (citing Hawaii Revised Statutes (HRS) § 490:3-205(b)[4] (2008)). When a note being foreclosed upon is indorsed in blank, the relevant question is whether the foreclosing plaintiff possessed the note,

---

[4] HRS § 490:3-205(b) states:

> (b) If an indorsement is made by the holder of an instrument and it is not a special indorsement, it is a "blank indorsement". When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed.

3

or was otherwise a holder of the note, not only at the time the foreclosing plaintiff filed for summary judgment, but also at the time the foreclosing plaintiff brought the foreclosure action. Id. To be entitled to summary judgment, there must be affirmative evidence that the note and indorsement in blank were in the foreclosing plaintiff's possession at the time the complaint was filed. U.S. Bank N.A. v. Mattos, 140 Hawai'i 26, 33, 398 P.3d 615, 622 (2017).

Here, on April 21, 2017, Citibank filed its Complaint against the Gaspars seeking to foreclose on the Gaspars' property due to their alleged breach of the Note and Mortgage originally executed in favor of Washington Mutual Bank. The Complaint indicates that Citibank subsequently acquired the interest in the Note and Mortgage by an "Assignment of Mortgage" recorded in the State of Hawai'i Bureau of Conveyances on April 27, 2009, and that Citibank "is now the owner and holder of the Note and the Mortgage." Attached to the Complaint was the Note with an undated, blank indorsement stamp on the reverse side of the final signature page.

Citibank submitted with its MSJ a "Declaration of Plaintiff in Support of Motion" (Fullmer Declaration) made by Ryan Fullmer, an employee of Select Portfolio Servicing, Inc. (SPS), as affirmative evidence that Citibank possessed the Note at the time of the Complaint. The Fullmer Declaration states that the original Note was executed and delivered to Washington Mutual Bank on January 10, 2007, and that a true and correct copy of the Note including any allonge or endorsement is attached as an exhibit to the MSJ. The Fullmer Declaration further states that the Gaspars' mortgage was assigned to Citibank via an assignment of mortgage recorded in the Bureau of Conveyances of the State of Hawai'i as Document Number 2009-063098 on April 27, 2009. The Fullmer Declaration does not provide a date for any physical transfer of the Note to Citibank's possession.

However, such issue was yet remediable so as to merit summary judgment if Citibank presented affirmative evidence that it was the physical holder of the Note at the time the Complaint was filed. Id. The Fullmer Declaration states that "SPS

4

currently services the loan as attorney-in-fact for [Citibank]."
The Fullmer Declaration further states that "[Citibank], directly
or through an agent, has possession of the note in this instant
action [], which has been duly endorsed, and was in possession of
the Note at the time of the filing of the complaint."  (Emphasis
added).  The MSJ also included as exhibits documents granting SPS
Limited Power of Attorney to act as Citibank's agent and a
document from SPS's internal records verifying that the Note was
physically located in an SPS facility at the time the Complaint
was filed.

If such evidence was admissible and properly
authenticated, addressed *infra*, then Citibank would have
successfully met its burden under Mattos and Reyes-Toledo to
present affirmative evidence that it was the holder of the
physical Note at the time the Complaint was filed.

However, the Gaspars next contend that there were
multiple issues regarding the admissibility of the Fullmer
Declaration under Hawaii Rules of Evidence (HRE) Rule 803(b)(6)
(2016), which provides a hearsay exception for the admission of
business records.[5]

Any evidence submitted by a foreclosing plaintiff in
support of its motion for summary judgment must be admissible,
else it "cannot serve as a basis for awarding or denying summary
judgment."  Wells Fargo Bank, N.A. v. Behrendt, 142 Hawai'i 37,
44, 414 P.3d 89, 96 (2018) (citations omitted).  To qualify as

---

[5] HRE Rule 803(b)(6) states in relevant part:

**Hearsay exceptions; availability of declarant immaterial.**
The following are not excluded by the hearsay rule, even
though the declarant is available as a witness:

. . . .
    (b) Other exceptions.

. . . .
    (6)  Records of regularly conducted activity.  A
memorandum, report, record, or data compilation, in
any form, of acts, events, conditions, opinions, or
diagnoses, made in the course of a regularly conducted
activity, at or near the time of the acts, events,
conditions, opinions, or diagnoses, as shown by the
testimony of the custodian or other qualified witness,
or by certification that complies with rule 902(11) or
a statute permitting certification, unless the sources
of information or other circumstances indicate lack of
trustworthiness.

such admissible evidence, a declaration in support of a motion for summary judgment under Hawaiʻi Rules of Civil Procedure (HRCP) Rule 56(e) (2000),[6] "must be based on personal knowledge, contain facts that would be admissible in evidence, and show that the declarant is competent to testify as to the matters contained within the declaration." Id. at 44, 414 P.3d at 96 (quoting Mattos, 140 Hawaiʻi at 30, 398 P.3d at 619).

In this case, per HRE Rule 803(b)(6), the Fullmer Declaration stated that Fullmer was an officer of SPS, servicer for Citibank related to the Gaspars' loan, and that Fullmer had access to and was familiar with the Gaspars' loan records through the regular performance of his job. Furthermore, the Fullmer Declaration indicated that the documents to which Fullmer referred to in preparing his declaration were "maintained by SPS in the course of its regularly conducted business activities and are made at or near the time of the event, by or from information transmitted by a person with personal knowledge. It is the regular practice to keep such records in the ordinary course of a regularly conducted business activity." Thus, the Fullmer Declaration established that Fullmer was a "qualified witness" as to SPS's records because SPS relies on the documents related to the Gaspars' loan, there are further indicia of reliability given SPS's business practices, and the documents constituted "records of regularly conducted activity" that were admissible as a hearsay exception, pursuant to Rule 803(b)(6). See Mattos, 140

---

[6] HRCP Rule 56(e) states:

> (e) Form of affidavits; further testimony; defense required. Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Hawai'i at 32, 398 P.3d 621.

However, SPS was not the original servicer of the loan, and the Fullmer Declaration states that SPS's business records incorporated the business records of the previous loan servicer. Thus, the Fullmer Declaration must also establish that Fullmer is a "qualified witness" with regards to records incorporated from the prior loan servicer. Id. at 32-33, 398 P.3d 621-22.

> The court in Mattos held that a witness may be qualified to provide the testimony required by HRE Rule 803(b)(6) even if the witness is not employed by the business that created the document or lacks direct, personal knowledge of how the document was created. Id. "There is no requirement that the records have been prepared by the entity that has custody of them, as long as they were created in the regular course of some entity's business." Id. (quoting State v. Fitzwater, 122 Hawai'i 354, 366, 227 P.3d 520, 532 (2010)). The witness, however, must have enough familiarity with the record-keeping system of the business that created the record to explain how the record was generated in the ordinary course of business. Id.
> Records received from another business and incorporated into the receiving business' records may in some circumstances be regarded as "created" by the receiving business. Id. Incorporated records are admissible under HRE Rule 803(b)(6) when a custodian or qualified witness testifies that the documents were incorporated and kept in the normal course of business, that the incorporating business typically relies upon the accuracy of the contents of the documents, and the circumstances otherwise indicate the trustworthiness of the document. See id.; Fitzwater, 122 Hawai'i at 367-68, 227 P.3d at 533-34.

Behrendt, 142 Hawai'i at 45-46, 414 P.3d at 97-98. When reviewing a declaration testifying to the incorporation of records from a previous business (in addition to the declarations required under HRE 803(b)(6) and Fitzwater[7] concerning the employee's familiarity with the records of their own business) the Hawai'i Supreme Court has reviewed an employee's declaration to ascertain whether the employee had knowledge of the record keeping system of the previous business, whether the records were created by the previous business in the normal course of business, and whether the records were received from the previous business and incorporated into the present business's records.

---

[7] Incorporated records are admissible under HRE Rule 803(b)(6) when a custodian or qualified witness testifies that the documents were incorporated and kept in the normal course of business, that the incorporating business typically relies upon the accuracy of the contents of the documents, and the circumstances otherwise indicate the trustworthiness of the document.

Behrendt, 142 Hawai'i at 97-98, 414 P.3d at 45-46 (citations omitted).

Mattos, 140 Hawaiʻi at 32-33, 398 P.3d 621-22; Behrendt, 142 Hawaiʻi at 45-46, 414 P.3d at 97-98.

In this case, the Fullmer Declaration states that: Fullmer had knowledge of the record keeping system of the previous loan servicer; the previous servicer followed industry-wide standards in keeping and maintaining business records related to mortgage records; and SPS received, verified, incorporated, and currently relies on the prior servicer's records as part of SPS's business records. Accordingly, to the extent that SPS's records incorporated the records of a prior loan servicer, Fullmer was a "qualified witness" who properly authenticated those records via the Fullmer Declaration.

> However, while the statements made by Fullmer are necessary to lay a foundation for admissibility under HRE Rule 803(b)(6) with regard to being a qualified witness who may testify as to the reliability of the records at issue, [they] are not sufficient to show trustworthiness on their own [under HRE Rule 803(b)(6)] when the totality of circumstances indicate the opposite.

Nationstar Mortg. LLC v. Kanahele, No. SCWC-16-0000319, 2019 WL 1931703, at *8 (Haw. May 1, 2019). In Kanahele, the Hawaiʻi Supreme Court held that conflicting information contained in declarations in support of a motion for summary judgment, without sufficient explanation by the moving party, could render untrustworthy, and thus inadmissible, the record evidence under HRE Rule 803(b)(6), even if the witnesses were otherwise qualified and the evidence was otherwise admissible. Id. at *8 & *10. The supreme court clarified, however, that "not all mistakes, or allegations of mistake, in a company's business records will render that company's record-keeping practices untrustworthy, and therefore render their records inadmissible." Id. at *9. "[V]ague testimony that a company 'kept bad paperwork,' without more, [does] not warrant a conclusion that the company's records as a whole were untrustworthy." Id. (brackets omitted) (quoting State v. Forman, 125 Hawaiʻi 417, 424-25, 263 P.3d 127, 134-35 (App. 2011)). Thus, while the totality of the circumstances must be considered when evaluating the trustworthiness of a business record, application of the business records rule cannot be avoided on the basis "that a

8

regular practice is occasionally broken." Id. at *8-9.

In the present case, the Gaspars contend on appeal that the records authenticated by the Fullmer Declaration raise questions regarding whether Citibank actually possessed the Note at the time the Complaint was filed.

The Fullmer Declaration states that the mortgage on the Gaspars' property was assigned to Citibank and recorded on April 27, 2009. There is no information as to whether the original, physical copy of the Note, and indorsement in blank, were delivered to Citibank's (or its agent's) possession at that time. Paragraph three of the Fullmer Declaration states that "Plaintiff [Citibank] does not hold or maintain any of the loan level business records, and thus Plaintiff [Citibank] does not have loan level business records to integrate into SPS's records." (Emphasis added). However, paragraph twelve of the Fullmer Declaration states that "Plaintiff [Citibank], directly or through an agent, has possession of the [N]ote in this instant action[], which has been duly endorsed, and was in possession of the Note at the time of the filing of the complaint." (Emphases added). The Fullmer Declaration further states that Exhibit 4 to the MSJ was an excerpt from SPS's internal records indicating that the original Note, and attached indorsement in blank, were located in a specific SPS facility as of April 12, 2017, prior to Citibank's filing of the Complaint on April 21, 2017. Thus, the Fullmer Declaration is internally inconsistent.

Additionally, the Fullmer Declaration and its exhibits do not establish that on April 12, 2017, SPS held the Note on behalf of Citibank. According to Exhibit 8 to the Fullmer Declaration, SPS did not become attorney-in-fact for JPMorgan Chase Bank, National Association (JPMorgan), the "Master Servicer" for Citibank, until October 24, 2017; and JPMorgan did not become attorney-in-fact for Citibank until October 4, 2017. Thus, the record is devoid of any evidence showing that SPS held the Note on behalf of Citibank when the Complaint was filed on April 21, 2017. Because Citibank has not shown that it was entitled to enforce the Note when the Complaint was filed on April 21, 2017, summary judgment was inappropriate.

9

Reyes-Toledo, 139 Hawai'i at 368-69, 390 P.3d 1255-56.

The Gaspars also contend on appeal that various prior assignments of the mortgage were invalid because they involved persons named as "robo-signers" in other cases and they were in violation of the relevant pooling and servicing agreement (PSA). As we resolve the case on other grounds, a determination of the legal effect of robo-signing is not necessary at this time. Mattos, 140 Hawai'i at 34, 398 P.3d at 623.

Regarding whether the assignments of the mortgages violated the relevant PSA, the Gaspars do not provide the actual text of the PSA, so there is no evidence that the prior mortgage assignments violated the terms of the PSA. Id. at 35, 398 P.3d at 624. As third parties, unrelated to the PSA, the Gaspars lack "standing to challenge assignments based on alleged violations of the PSA's terms unless the violation would render the assignment void." Id. Accordingly, because the PSA is not in evidence, we do not decide whether any of its terms were violated and, if so, whether any such violation renders an assignment void or voidable.

Based on the foregoing, the May 18, 2018 "Judgment" filed in the Circuit Court of the Third Circuit is vacated. This case is remanded for further proceedings consistent with this opinion.

DATED: Honolulu, Hawai'i, June 28, 2019.

On the briefs:

William Gaspar,
and Joyal Gaspar,
Defendants-Appellants.

Marvin S.C. Dang,
and Amy Jackson,
(Law Offices of Marvin S.C.
Dang, LLLC)·
for Plaintiff-Appellee.

Chief Judge

Associate Judge

Associate Judge